Christopher Shaw TIPTON,

v.

**FEDERAL BUREAU OF PRISONS, et. al.**

Kerry Christopher Canavan,

v.

**Federal Bureau of Prisons, et. al.**

Brian Brinsfield

v.

**Federal Bureau of Prisons, et. al.**

**Nos. CIV.A.CCB 03–153, CIV.A.CCB 03–154, CIV.A.CCB 03–192.**

United States District Court,
D. Maryland.

May 15, 2003.

**634**

Eric R. Delinsky, Sarah S. Gannett, James Wyda, Office of Fed. Public Defender, Baltimore, MD, for Kerry Christopher Canavan.

Sarah S. Gannett, James Wyda, Office of Fed. Public Defender, Baltimore, MD, for Christopher Shawn Tipton.

Larry A. Nathans, Booth Marcus Ripke, Bennett and Nathans, LLP, Baltimore, MD, for Brian Brinsfield.

### ORDER

BLAKE, District Judge.

For the reasons stated in the accompanying Memorandum, it is hereby **OR-DERED** that:

(1) the plaintiffs' motions for a preliminary injunction (docket no.6 in CCB–03–153, docket no. 7 in CCB–03–154, docket no. 2 in CCB–03–192) are **granted**;

(2) the Bureau of Prisons is enjoined from transferring Christopher Shaw Tip-

ton, Kerry Christopher Canavan, or Brian Brinsfield, from their current community confinement centers pursuant to the new Bureau of Prisons policy described in the December 16, 2002 memorandum from Deputy Attorney General Larry Thompson to Bureau of Prisons director Kathleen Hawk Sawyer;

(3) counsel shall submit their suggested schedules for any further proceedings in these cases by June 2, 2003; and

(4) the Clerk shall send this Order, and the accompanying Memorandum, to counsel of record.

### MEMORANDUM

These related cases involve requests for injunctive relief filed on behalf of Christopher Shawn Tipton, Kerry Christopher Canavan, and Brian Brinsfield, all of whom are presently serving sentences in community confinement centers run by the Volunteers of America ("VOA"). All three have been advised, pursuant to the new policy imposed on the Bureau of Prisons ("BOP") by the Department of Justice ("DOJ"), that they are to be transferred to the Federal Correctional Institution in Morgantown, West Virginia to serve the remainder of their sentences. Following oral argument, temporary restraining orders were granted on January 22, 2003. With consent of counsel, the orders were extended until April 30, 2003, to permit full briefing of the motions for preliminary injunction. That has been completed, and neither side requests a hearing. For the reasons that follow, the motions for preliminary injunction will be granted.

*Facts* [1]

Tipton pled guilty to a criminal information charging him with conspiracy to distribute cocaine. On April 29, 2002, Tipton

---

1. The government does not challenge the plaintiffs' statements of fact, which in any event are well supported by the record.

was sentenced by Judge Frederic N. Smalkin to a term of imprisonment of twelve months and one day. Judge Smalkin recommended that Tipton be assigned to "a residential CTC, specifically VOA, Baltimore, Md., with work release." The BOP agreed, and told Tipton to report as designated to VOA on August 26, 2002. He did so, and has been fully compliant with the terms of his sentence since then. Service of his sentence at VOA permits him to support his wife and two-year-old daughter by full-time employment as an apprentice journeyman lineman, which was Judge Smalkin's intention. Severe financial hardship, possibly including bankruptcy, would result from the loss of this employment. He may also be terminated from the apprenticeship program, which would affect his later ability to earn a living. Similarly, as the court intended, service of his sentence at a community confinement center permits him to maintain a parental bond that would be difficult to do with the greater travel distance and limited visitation available at FCI Morgantown.

Canavan pled guilty to conspiracy to commit money laundering. On June 19, 2002, he was sentenced by Judge Frederic N. Smalkin to a term of imprisonment of 15 months. Judge Smalkin recommended that Canavan be housed in "a residential CTC, preferably VOA, Baltimore, MD." The BOP again agreed, and told Canavan to report to VOA on September 24, 2002. He did so, and has had no trouble at VOA since then. His ability to work full-time in an accounting office and with other family business interests has supported his wife, in-laws, and three daughters and prevented bankruptcy. This job will be lost if he is transferred to FCI Morgantown. Most significantly, service of his sentence at VOA permits him to maintain daily contact, by telephone or visitation at VOA, with his wife, who suffers from multiple sclerosis. She is, for the most part, confined to a wheelchair, and manages daily activities only with difficulty. As she says: "My husband has been with me for the duration of my illness, and I rely on my husband for the emotional support I need to get out of bed every morning." (Declaration of Bonnie Canavan at ¶ 7).

Brinsfield pled guilty to bank fraud. On September 16, 2002, he was sentenced by Judge Benson E. Legg to a term of imprisonment of twelve months and one day. Judge Legg recommended that he be designated to "the Wicomico County Detention Center's Work Release Program, if available or Sussex Work Release Facility in Georgetown, Delaware." The BOP agreed, and directed Brinsfield to report to the Sussex facility on December 9, 2002. He did so, and, like Tipton and Canavan, has been a model inmate. He is employed full time at a furniture company and is thus able to contribute to the support of his family. He also maintains contact with them that would be severely reduced if he were moved to Morgantown, West Virginia, a travel distance of over 300 miles from their home on Maryland's lower Eastern Shore.

At the time petitioners were sentenced, it was the long-standing policy of the BOP to follow the recommendation of the sentencing judge to place certain offenders in community confinement centers as a substitute for imprisonment, except in unusual circumstances. On December 16, 2002, however, the BOP changed its policy. Based on a memorandum prepared by the Office of Legal Counsel, Deputy Attorney General Larry Thompson directed the BOP to no longer follow judicial recommendations of confinement in a community confinement center. Instead, the BOP was directed to place such offenders in a Federal Correctional Institution. The policy was to be applied prospectively, with the exception of inmates who had more than 150 days remaining on their sentences as of December 16, 2002. The pe-

titioners were redesignated to Federal Correctional Institutions pursuant to the retroactive application of this policy on December 23, 2002.

*Analysis*

The Fourth Circuit has set forth four factors to be considered for the issuance of a preliminary injunction:

(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,

(2) the likelihood of harm to the defendant if the requested relief is granted,

(3) the likelihood that the plaintiff will succeed on the merits, and

(4) the public interest.

The irreparable harm to the plaintiff and the harm to the defendant are the two most important factors.

*Direx Israel v. Breakthrough Medical Corp.*, 952 F.2d 802, 812 (4th Cir.1991) (internal citations omitted).

 Further, if the balance of harms "tips decidedly in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Direx Israel*, 952 F.2d at 813 (internal quotation omitted).

 The undisputed facts establish that the initial requirement, proof of imminent and irreparable harm to the plaintiffs, has been satisfied. The financial, personal,

and medical-related hardships are clear and not remediable once suffered by the defendants and their families. There is no comparable harm to the government. The BOP was satisfied to make this placement, until told it could not, and the administrative and budgetary impact of the transfers only disadvantages the BOP. Further, the public interest in maintaining the defendants as productive, wage-earning members of the community with stable families far outweighs any statement the Department of Justice hopes to make concerning the need to treat certain offenders more harshly, as whatever legitimate policy concerns may have motivated this change will be equally served by a prospective application of the new rule.

Because the balance of harms tips decidedly in favor of the plaintiffs, their burden is to show that "serious, substantial, difficult and doubtful" questions have been raised by their claims. *Direx Israel*, 952 F.2d at 813. They have done so. A number of opinions already have been issued by other district courts on these issues. Perhaps the most comprehensive and well-reasoned is that authored by Judge Ponsor in *Iacaboni v. United States*, 251 F.Supp.2d 1015 (D.Mass.2003), with which I find myself in full agreement. Also persuasive and thorough is the decision of another district court in this Circuit, that of Chief Judge Mullen of the Western District of North Carolina in *Byrd v. Moore*, 252 F.Supp.2d 293 (W.D.N.C. 2003).[2]

---

**2.** In addition to the opinions in *Byrd* and *Iacaboni*, courts presented with challenges to the new BOP rule have reached a variety of results. A number of courts have granted preliminary injunctions or temporary restraining orders against operation of the new BOP policy. *See Ashkenazi v. Attorney General of the United States*, 246 F.Supp.2d 1 (D.D.C.2003) (granting a preliminary injunction on ex post facto grounds); *Howard v. Ashcroft*, 248 F.Supp.2d 518 (M.D.La.2003) (granting a preliminary injunction on Admin-

istrative Procedure Act grounds); *Ferguson v. Ashcroft*, 248 F.Supp.2d 547 (M.D.La.2003) (same). Some courts have permanently enjoined the BOP from transferring an inmate pursuant to the new policy. *See Culter v. United States*, 241 F.Supp.2d 19 (D.D.C.2003) (equitably estopping the application of the new BOP policy); *United States v. West*, Civ. No. 02–70239–DT, 2003 WL 1119990 (E.D.Mich. Feb.20, 2003) (same). One court held that the government had not followed

I will briefly state the reasons that lead me to conclude the plaintiffs are likely to prevail on the merits of their claims. First, for the reasons stated by Judge Ponsor, the government's new interpretation of the relevant statutory scheme is wrong. The plain language of 18 U.S.C. § 3621(b) permits the BOP to designate a community confinement center as the place of imprisonment, and this statutory language is not modified or set aside by the Sentencing Guidelines because "statutes trump guidelines, not vice versa." *Iacaboni,* 251 F.Supp.2d. at 1023–26; *see also Byrd,* 252 F.Supp.2d at 301–02. Second, judicial review of this kind of agency action is not barred by 18 U.S.C. § 3625, and the new rule appears invalid for failure to follow the notice and comment requirements of the Administrative Procedures Act. *Iacaboni,* 251 F.Supp.2d at 1036–40; *Byrd,* 252 F.Supp.2d at 302–03.

Third, there is a strong argument that the new rule violates the ex post facto clause and the requirements of due process. The sentences in these cases were entered with the expectation that the BOP would exercise its discretion in determining whether to follow the judge's recommendation for placement in a community confinement center. That expectation was fulfilled when the defendants were designated to the community confinement centers. Neither the defendants, counsel, or the court were aware that the BOP would later make a designation on the basis of a rule that eliminated that long-standing discretion. Moreover, the retroactive application of the policy only to those with more than 150 days remaining to serve on their sentences is arbitrary and irrational. *Iacaboni,* 251 F.Supp.2d at 1040–43; *Byrd,* 252 F.Supp.2d. at 303–06.

Finally, the requirement for administrative exhaustion of the plaintiffs' claims, to the extent any claims are unexhausted, (*see* Pls. Reply to Govt Opp. to Mot. for Prelim. Injunction Ex. A; Ex. B), is excused by its obvious futility. *See Ferguson,* 248 F.Supp.2d at -, Pls. Reply to Govt Opp. to Mot. for Prelim. Injunction Ex. C at 26–30.

Accordingly, by separate Order the plaintiffs' Motion for Preliminary Injunction will be granted.

the Administrative Procedures Act's rulemaking requirements, and the new rule cannot be enforced until it does. *Mallory v. United States,* Civ. A. 03–10220, 2003 WL 1563764 (D.Mass.2003). The District Court for the District of Minnesota granted a motion to correct sentence under Rule 36 of the Federal Rules of Criminal Procedure in response to the rule change, on the grounds that the BOP change "misrepresents the Court's sentence no less than if the Clerk had omitted or mistakenly transcribed some important part of the sentence." *United States v. Canavan,* Crim. 00–276, 2003 WL 245226 at *1 (D.Minn.2003). One court has granted a downward departure to allow a defendant to avoid the consequences of the new BOP policy where the defendant plead guilty before the new policy, but was sentenced after it, because the policy violates the Ex Post Facto clause. *United States v. Serpa,* 251 F.Supp.2d 988 (D.Mass.2003).

Some courts, however, have denied relief to challenges to the new BOP policy. *See United States v. Andrews,* 240 F.Supp.2d 636 (E.D.Mich.2003) (rejecting a due process challenge to the BOP policy); *Borgetti v. Bureau of Prisons,* No. 03–50034, 2003 WL 743936 (N.D.Ill. Feb.14, 2003) (rejecting a challenge because the decision where to designate an inmate is solely within the BOP's discretion); *United States v. Schild,* No. 03–3028, 2003 WL 260672 (D.Kan. Jan.21, 2003) (rejecting an ex post facto challenge to the BOP policy); *United States v. Gilbride,* Crim. Act. 00–0320, 2003 WL 297563 (M.D.Pa. Jan.31, 2003) (same).