April Mizell **ESTES, et al., Plaintiffs,**

v.

**FEDERAL BUREAU OF PRISONS, Harley G. Lappin,[1] Director, Federal Bureau of Prisons, sued in his official capacity, R.E. Holt, Regional Director, Federal Bureau of Prisons and R.E. Holt, Community Corrections Manager, Federal Bureau of Prisons, and the United States of America, Defendants.**

No. CIV.A. 03–0070–CB–L.

United States District Court,
S.D. Alabama,
Southern Division.

July 24, 2003.

---

1. Harley G. Lappin, the current Director of the Bureau of Prisons, has been substituted as defendant for former Director Kathleen Hawk Sawyer. *See* p. ——.

Charles Baer, U.S. Attorney's Office, Mobile, AL, for Federal Bureau of Prisons.

Thomas M. Haas, Mobile, AL, for Scotty Summers.

Willie J. Huntley, Jr., Adero Soyini Jernigan, Huntley Law Firm, Mobile, AL, for Lettice Lelani Suggs.

W. A. Kimbrough, Turner, Onderdonk, Kimbrough & Howell, P.A., Mobile, AL, for Amanda Powell.

## MEMORANDUM OPINION

BUTLER, District Judge.

This action involves a challenge to a Bureau of Prisons (BOP) policy regarding incarceration of federal prisoners in Community Corrections Centers (CCC's). At issue is whether the BOP has violated either the Administrative Procedures Act (APA) or the plaintiffs' constitutional rights by concluding that, as a matter of law, the BOP cannot allow a federal prisoner to serve a term of imprisonment in a CCC. Because the Court concludes that the BOP's policy is invalid under the APA, it does not reach the constitutional issues.

### I. Facts

Each of the plaintiffs has been convicted in this Court of a Federal crime and each has been sentenced to a term of imprisonment of less than one year.[2] In each case, the judge recommended at sentencing (as reflected in the written judgment) that the BOP designate the local Community Corrections Center in Spanish Fort, Alabama as the place where the plaintiff would serve all or part of his or her term of imprisonment. While plaintiffs were either awaiting designation by the BOP or, in the case of Estes, awaiting the reporting date after designation to a CCC,[3] the BOP

---

**2.** Plaintiff April Mizell Estes was originally sentenced to a term of imprisonment of 150 days. Compl. ¶ 2. The judgment was later amended to reflect a sentence of 120 days. *Id.* Antonio Rico Madden was sentenced to a term of imprisonment of five months. *Id.* ¶ 3. Plaintiff Scotty Summers was sentenced to a term of imprisonment of ten months with a recommendation that the term be split, with five months to be served at the CCC. *Id.* ¶ 4. Intervening plaintiffs Lettice Suggs and

Amanda Powell were each sentenced to one-month terms of imprisonment.

**3.** Estes was twice designated to the CCC at Spanish Fort by the BOP. The United States Marshal's Service failed to notify her of the initial November 2002 reporting date. Therefore, Estes was given a second reporting date, December 27, 2002. Because the new BOP policy took effect before her reporting date, Estes was not accepted at the CCC when she reported as notified.

announced a change in its policy regarding the designation of federal prisoners to CCC's.[4]

By memorandum issued on December 20, 2002, the BOP's then-director Kathleen Hawk Sawyer ("the director") informed federal judges that federal inmates could no longer be designated to serve their terms of imprisonment in CCC's. The decision was based on a memorandum opinion issued by the Attorney General's Office of Legal Counsel ("OLC"), dated December 13, 2002, which concluded that the BOP's longstanding practice of committing inmates to CCC's, a practice that had been followed for decades,[5] violated the law. The OLC's memo concluded that the statutory provision the BOP had, for the past 15 years, interpreted as giving the agency discretion to designate inmates to serve their terms in CCC's actually forbade that practice. Following the OLC's new interpretation, the director concluded that henceforth only inmates with less than 10 percent of their term imprisonment remaining could be confined in CCC's.[6]

As a result of the BOP's change in policy, each of the plaintiffs in this case was denied designation to a CCC.

The gist of the OLC's opinion is as follows:

> Your office has informed us that when a federal offender whom the Bureau of Prisons ("BOP") deems to be low-risk and nonviolent receives a short sentence of imprisonment, BOP often places that offender in a community corrections center, halfway house, or other form of "community confinement," rather than

in prison. Your office has asked us to advise you whether BOP has general authority, either upon the recommendation of the sentencing judge or otherwise, to place such an offender directly in community confinement at the outset of his sentence or to transfer him from prison to community confinement during the course of his sentence.

> We conclude below that BOP has no such general authority. As we explain, BOP's statutory authority to implement sentences of imprisonment must be construed, wherever possible, to comport with the legal requirements that govern the federal courts' sentencing order, and BOP lacks clear general statutory authority to place in community confinement an offender who has been sentenced to a term of imprisonment. BOP's practice is therefore unlawful.

Memorandum Opinion dated December 13, 2002, M. Edward Whelan III, Principal Deputy Assistant Attorney General, Office of Legal Counsel. (Ex. to United States Supp. to Mtn. to Dismiss, Doc. 20.)

Because the BOP denied CCC placement to plaintiffs based on its new policy that designation to a CCC was not within its discretion, plaintiffs filed the instant action seeking preliminary and permanent injunctive relief to prevent enforcement of the new policy. Plaintiffs assert that they are entitled to a writ of habeas corpus under 28 U.S.C. § 2241 because the BOP has, by adopting the current policy regarding CCC placement, violated both their constitutional rights and the Administra-

---

**4.** The terms "CCC", "halfway house", and "Community Treatment Center" are used interchangeably. *See* BOP Program Statement 7310.04, p. 7, *available at* http://www.bop.gov ("CCC's, commonly referred to as halfway houses..."); *see also* S. Rep. 93–418 (1973), *reprinted in* 1973 U.S.C.C.A.N. 3017, 3020 (referring to Community Treatment Centers as halfway houses).

**5.** See S. Rep 93–418 (community confinement used "extensively" since 1965).

**6.** The OLC's opinion determined that Congress had specifically authorized the BOP to designate these inmates to CCC's in order to facilitate their transition back into the community.

tive Procedures Act (APA), 5 U.S.C. §§ 701 *et seq.* In addition, plaintiffs assert claims directly under the APA.

## II. Procedural Background

### A. The Parties

Because of events that have occurred during the course of these proceedings, it is necessary to identify those who are currently parties to this action. This original complaint was filed by April Mizell Estes, Antonio Rico Madden and Scotty Summers, who were and are plaintiffs. The complaint named as defendants the Federal Bureau of Prisons, its former director Kathleen Hawk Sawyer and R.E. Holt, in his capacities as Regional Director and Community Corrections Manager. Shortly thereafter, a motion to intervene as plaintiff was filed by Lettice Lelani Suggs and was granted without objection. Ms. Suggs has died, however, during the pendency of this action.[7] Therefore, pursuant to Fed.R.Civ.P. 25(a)(2), her claims are abated.[8] Recently, a motion to intervene as plaintiff was filed by Amanda Powell. Because it appears that Powell's claims are identical to those asserted by the plaintiffs, Powell's motion to intervene (doc. 23) is **GRANTED.**

In their motion to dismiss, defendants asserted that the suit was, in fact, one against United States and that the Federal Bureau of Prisons and the individual defendants were due to be dismissed on sovereign immunity grounds. Without conceding that the dismissal of other defendants was appropriate, the plaintiffs amended the complaint to add the United States as a defendant. (Docs. 11 & 12.) In a reply brief, the defendants have conceded that the Director of the Bureau of Prisons, in his official capacity, is a proper defendant to this action. Pursuant to Fed.R.Civ.P. 25(d)(1), Harley G. Lappin, the current Director of the Bureau of Prisons is due to be substituted as defendant in place of former Director Kathleen Hawk Sawyer.[9] In fact, because this is an action for prospective injunctive relief brought under the APA, sovereign immunity has been waived with respect to *any* agency official and the agency itself. *See* 5 U.S.C. § 702. Therefore, both R.E. Holt, who is sued in his official capacities as the Southeast Regional Director and Community Corrections Manager, and the Bureau of Prisons are proper defendants.

### B. Causes of Action

The original complaint sets forth seven claims. Counts One through Three are constitutional claims asserted under the general habeas statute, 28 U.S.C. § 2241, for violation of Fifth Amendment's Due Process Clause (Count One), violation of the Fifth Amendment's Equal Protection Clause (Count Two), and violation of the Constitution's Ex Post Facto Clause (Count Three). Counts Four through Six are claims under the APA which allege that the new policy "is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the law" in violation of 5 U.S.C. § 706(2)(A) (Count Four), that the new policy exceeds the BOP's statutory jurisdiction and authorization and is "short of statutory right" in violation of 5

---

7. In a brief filed on June 2, 2003, defendants' counsel asserts that it is his "understand[ing] that Lettice L. Suggs has died." (Doc. 20, p. 1.) While counsel for Suggs has not responded to this suggestion of death, the Court has confirmed Ms. Suggs' death with the United States Pretrial Services officer who was supervising Ms. Suggs pending her surrender to the Bureau of Prisons.

8. Ms. Suggs' claims against the defendant are, therefore, DISMISSED.

9. According to the Bureau of Prisons official website, Harley G. Lappin became Director on April 4, 2003. *See* http://.www.bop.gov.

U.S.C. § 706(2)(C) (Count Five) and that the new rule was enacted "without observance of procedure required by law" in violation of 5 U.S.C. § 706(2)(D). In Count Seven plaintiffs assert a claim for equitable relief, alleging that "[d]efendants are equitably estopped from implementing the new rule because of the violations set forth in Counts One through Six herein." Plaintiffs amended their complaint to add a claim based on "violation of the separation of powers doctrine as articulated in *United States v. Klein*, 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871)" (Count Eight). The Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 2241.

After the complaint was amended to add Count Eight, plaintiff Antonio Rico Madden filed a separate amendment to the complaint attempting to set forth a claim, applicable only to him, for relief under 28 U.S.C. § 2255. (Doc. 13.) "A party may amend the party's pleading *once* as a matter of course at any time before a responsive pleading is filed.... Otherwise a party may amend only by leave of court or by written consent of the adverse party." Fed.R.Civ.P. 15(a) (emphasis added). The complaint had already been amended by all plaintiffs when Madden attempted to amend without leave of court or consent of the defendants. Therefore, Madden's "Amendment to Complaint" is hereby **STRICKEN**.

## C. Submission of Case on Merits

On May 12, 2003, the Court entered an order consolidating the motion for preliminary injunction with the trial on the merits pursuant to Fed.R.Civ.P. 65(a)(2). In that order, the Court further informed the parties of its intention to take the case under submission without an evidentiary hearing because there appeared to be no factual disputes to be resolved. The parties were given an opportunity to object to the Court's proposed method for resolving this dispute, and no party has objected. The parties were also given time to supplement the briefs previously filed with additional legal authority, which they have done. Accordingly, this action is ripe for decision.

## III. Legal Conclusions

The BOP's change in policy regarding CCC designation has resulted in a stream of lawsuits in federal district courts throughout the nation. The grounds for challenging the policy have varied, and courts have been almost evenly divided in granting and denying relief.[10] Plaintiffs in

---

10. Cases granting either temporary or permanent relief: *Pearson v. United States*, 265 F.Supp.2d 973, 2003 WL 21262866 (E.D.Wis. May 19, 2003); *United States v. Tkabladze*, No. 03–01152 (C.D.Cal. May 16, 2003); *Tipton v. Bureau of Prisons*, 262 F.Supp.2d 633 (D.Md.2003); *Mallory v. United States*, 2003 WL 1563764 (D.Mass. Mar. 25, 2003); *Iacaboni v. United States*, 251 F.Supp.2d 1015 (D.Mass.2003); *United States v. Serpa*, 251 F.Supp.2d 988 (D.Mass.2003); *Byrd v. Moore*, 252 F.Supp.2d 293 (W.D.N.C.2003); *Ferguson v. Ashcroft*, 248 F.Supp.2d 547 (M.D.La. 2003); *Howard v. Ashcroft*, 248 F.Supp.2d 518 (M.D.La. Feb.27, 2003); *Ashkenazi v. Attorney General*, 246 F.Supp.2d 1 (D.D.C. Feb.24, 2003); *Culter v. United States*, 241 F.Supp.2d 19 (D.D.C. Jan. 27, 2003). Cases denying either temporary or permanent relief: *United States v. Pena*, 2003 WL 21197024 (W.D.N.Y. May 16, 2003); *United States v. Doan*, Criminal No. 00–181 (E.D.Pa. March 11, 2003); *United States v. Kramer*, 2003 WL 1964489 (N.D.Ill. Apr. 28, 2003); *Borgetti v. Bureau of Prisons*, 2003 WL 743936 (N.D.Ill. Feb.14, 2003); *United States v. Herron*, 2003 WL 272170 (D.Kan. Feb.3, 2003); *United States v. James*, 244 F.Supp.2d 817 (E.D.Mich. Jan.27, 2003); *United States v. Gilbride*, 2003 WL 297563 (M.D.Pa. Jan.31, 2003); *United States v. Schild*, 2003 WL 260672 (D.Kan. Jan.21, 2003); *United States v. Andrews*, 240 F.Supp.2d 636 (E.D.Mich. Jan.13, 2003). The majority of cases have addressed challenges to the BOP policy in the context of motions for preliminary injunctive relief.

this case have drafted a complaint that, as far as the Court can determine, incorporates every argument raised in these cases. Because the Court concludes that the policy is due to be enjoined under the APA, there is no reason to address plaintiffs' remaining claims.[11]

## A. Standard of Review

The APA gives courts the power to review agency action and to "hold unlawful and set aside agency action, findings, and conclusions found to be... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). When reviewing an agency's statutory interpretation under this provision, a court must follow the analysis set forth by the Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[12]

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency must give effect to the unambiguously expressed intent of Congress. If, however, the Court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court

is whether the agency's answer is based on a permissible construction of the statute.

*Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778 (footnotes omitted).

## B. Applying *Chevron*

The analysis must begin with the statutory provisions at issue. First, 18 U.S.C. § 3621(a), which commits persons sentenced to imprisonment to the custody of the Bureau of Prisons, reads as follows:

> **(a) Commitment to Custody of Bureau of Prisons.**—A person who has been sentenced to a term of imprisonment pursuant to the provisions of subchapter D of chapter 227 shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624.

The following subsection, § 3621(b), gives BOP the discretion to designate a prisoner's place of imprisonment.

> **(b) Place of imprisonment.**-The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-

---

11. *See American Bus Ass'n v. Slater,* 231 F.3d 1, 7 (D.C.Cir.2000)(when agency interpretation is contrary to statute, no need to address APA notice-and-comment challenge); *Pittman v. Cole,* 267 F.3d 1269 (11th Cir.2001) (federal courts should avoid constitutional issues where possible).

12. *See Holland v. National Mining Ass'n,* 309 F.3d 808, 815 (D.C.Cir.2002) ("[i]n reviewing an agency's statutory interpretation under the APA's 'not in accordance with law' standard, we adhere to the familiar two-step test of *Chevron* ").

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence-

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

. . .

Another pertinent provision, 18 U.S.C. § 3622, which governs the "[t]emporary release of a prisoner," states, in relevant part:

The Bureau of Prisons may release a prisoner from the place of his imprisonment for a limited period of time if such release appears to be consistent with the purpose for which the sentence was imposed and any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) if such release appears to be otherwise consistent with the public interest and if there is reasonable cause to believe that a prisoner will honor the trust to be imposed in him, by authorizing him, under prescribed conditions to—

. . .

(c) work at paid employment in the community while continuing in official

detention at the penal or correctional facility . . .

Stated simply, the statutes say that: (1) BOP has custody of a prisoner during his term of imprisonment, 18 U.S.C. § 3621(a); (2) BOP has final authority to designate the place of imprisonment, 18 U.S.C. § 3621(b); (3) in exercising its authority, BOP has discretion to designate *any penal or correctional facility* approved by BOP, whether public or private, as the place of imprisonment, *id.;* (4) BOP's exercise of its discretion is to be guided by the factors set forth in 18 U.S.C. § 3621(b)(1)-(5); and (5) BOP may release a prisoner to work in the community while he is imprisoned in a *penal or correctional facility,* 18 U.S.C. § 3622.

The rationale behind the OLC's opinion is, in brief, as follows: Cases interpreting the United States Sentencing Guidelines have held that the phrase "term of imprisonment" as used in the United States Sentencing Guidelines does not, for purposes of the Sentencing Guidelines, include confinement in a CCC. *Id.* pp. 3–4. Therefore, that same phrase—"term of imprisonment"—as used by Congress in the statutes governing BOP cannot include confinement in a CCC, even though Congress has given BOP broad discretion to determine the place of imprisonment, because imprisonment does not include a CCC.[13] *Id.* pp. 6–7. Thus, the question presented by the BOP/OLC interpretation is whether Congress intended the phrase "place of imprisonment" to limit the broad discretion the statute seems to confer on BOP to choose *any* penal or correctional institution it deems suitable.

The first step of the *Chevron* analysis is whether Congress has spoken clearly and unambiguously on the matter. The Su-

---

**13.** If the logic seems circular, it is. When one begins with the premise that "imprisonment" and "CCC's" are mutually exclusive concepts, then no matter what the rest of the statute says about the BOP's discretion to determine where a term of imprisonment may be served, it cannot be served in a CCC because a CCC is not imprisonment.

preme Court has instructed that in making this determination the Court should "not start from the premise that this language is imprecise[ ][but][i]nstead [ ] [must] assume that in drafting this legislation, Congress said what it meant. Giving the words used their 'ordinary meaning.'" *United States v. LaBonte*, 520 U.S. 751, 757, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997).

In § 3621(b) Congress has said that the BOP may choose as the place of imprisonment any public or private penal or correctional facility it deems to be suitable. Since the OLC memo concedes that a CCC is a correctional facility,[14] the question is whether by using the phrase "place of imprisonment" Congress limited the correctional facilities to which BOP could designate prisoners. The Court must begin by determining the "ordinary meaning" of the statute's operative language. First, imprisonment means "[t]he action of imprisoning, or fact or condition of being imprisoned; detention in a prison or place of confinement; close or irksome confinement; 'forcible restraint within bounds'; incarceration." Oxford English Dictionary (2nd ed.1989). Correctional is defined as "of or pertaining to correction" while the definition of correction includes *"house of correction:* a building for the confinement and punishment of offenders, *esp.* with a view to their reformation..." *Id.* So, imprisonment means being detained in a place of punishment or confinement, and a correctional facility is a place where pris-

oners are punished and confined. Since imprisonment is what happens in a correctional facility, the term "imprisonment" does not limit the phrase "correctional facility."

That Congress intended CCC's to be included as places of imprisonment is further supported by 18 U.S.C. § 3622(c). That section authorizes BOP to "release a prisoner *from the place of his imprisonment* for a limited period of time work at paid employment in the community... *while continuing in official detention at* the penal or *correctional facility.*" A CCC *is* a correctional facility where prisoners are incarcerated but are released for limited periods of allowed to work at paid employment.[15]

The Court's interpretation also finds support in the statute's legislative history. The Senate Report accompanying a 1965 amendment 18 U.S.C. § 4082, the predecessor to 18 U.S.C. § 3621, states that "[t]he purpose of the proposed legislation... is to facilitate the rehabilitation of persons convicted of offenses against the United States. Its basic provisions authorizing the use of residential community treatment centers, emergency furloughs, and community employment or training would get prisoners started in law-abiding careers before they are released from their terms of imprisonment." S. Rep. 89–613, *reprinted in* 1975 U.S.C.C.A.N. 3076. The 1965 amendment was described as "broaden[ing] the authority of the Attorney General... to designate the

---

**14.** The OLC "assume[s] *arguendo* that a community corrections center, halfway house, or other form of community confinement may constitute a 'penal or correctional facility' under the provisions of 18 U.S.C. § 3621(b)." While noting that the term "penal or correctional facility" is not defined in the statute, the OLC concedes that "[i]n a 1992 opinion ... we declined to draw a distinction between residential community facilities and secure facilities with respect to BOP's ... authority

[to contract with the private sector to operate secure facilities]." (OLC Memo, p. 7 n. 8.) In other words, OLC has previously defined "penal or correctional facility" to include CCC's and halfway houses.

**15.** The OLC describes a CCC as a "halfway house" where residents "are not confined to the facility throughout the day but instead are able to pursue outside employment, training and education." OLC Memo p. 7.

institutions for the confinement of persons committed to his custody for terms of imprisonment... and giv[ing] the Attorney General the additional authority to commit or transfer prisoners to residential community treatment centers." *Id.* A Senate Report accompanying an 1973 amendment to § 4082, which expanded the BOP's furlough authority, noted that "[w]ork and study release, Community Centers and furloughs have been used extensively since 1965 and the performance record has been exceptionally good." S.Rep. No. 93–418, *reprinted in* 1973 U.S.C.C.A.N. 3017, 3021.

When Congress enacted the Comprehensive Crime Control Act of 1984, it amended and renumbered § 4082 but clearly stated that its intent was not to limit the BOP's authority to designate prisoners. In that regard, the Senate Report states:

> Proposed 18 USC 3621(a) is debriefed from 18 U.S.C. § 4082(a) except that he new provision places custody of federal prisoners directly in the Bureau of Prisons rather than in the Attorney General. *This change is not intended to affect the authority of the Bureau of Prisons with regard to such matters as place of confinement of prisoners... and correctional programs,* but is designed only to simplify the administration of the prisons system.... Proposed 18 U.S.C. § 3621(b) *follows existing law in providing that the authority to designate the place of confinement for federal prisoners rests in the Bureau of Prisons.* The designated penal or correctional facility need not be in the judicial district in which the prisoner was convicted and need not be maintained by the federal

government. *Existing law provides that the Bureau may designate a place of confinement that is available, appropriate and suitable. Section 3621(b) continues that discretionary authority...* After considering these factors [such as nature and circumstances of the offense, recommendation of the court, etc.], the Bureau of Prisons may designate the place of imprisonment in an appropriate type of facility.

> ... The Committee, by listing factors for the Bureau to consider in determining the appropriateness or suitability of any available facility, *does not intent to restrict or limit the Bureau in the exercise of its existing discretion* so long as the facility meets the minimum standards of health and habitability.

S.Rep. No. 98–225 at 141–42 (1983).

■ Having examined the statute using well-established rules of statutory construction, it is easy to see the fallacy in OLC's logic. The OLC memo creates ambiguity where none exists. Rather than looking at the plain meaning of the statute, the OLC memo begins by examining the distinction between "imprisonment" and "community confinement" found in § 5C1.1 of the United States Sentencing Guidelines, and in cases interpreting the Guidelines. The answer to the seeming enigma created by OLC's memo is simply that resort to the Sentencing Guidelines is no substitute for straightforward statutory interpretation. Although the Sentencing Commission may have created a distinction between "imprisonment" and "community confinement," Congress did not. In such cases, it is the will of Congress, not the comments of the Sentencing Commission, that prevails.[16] *LaBonte,* 520 U.S. at 757,

---

16. While Congress has directed the Bureau of Prisons to take into consideration "pertinent policy statement[s] issued by the Sentencing Commission pursuant to 18 U.S.C. § 994(a)(2)" when determining the place of imprisonment, 18 U.S.C. § 3621(b)(5), Con-

gress did not authorize the Sentencing Commission to redefine a statute that for years has been understood with perfect clarity. Furthermore, the Sentencing Commission was not trying to define or interpret § 3621(b)

117 S.Ct. 1673 ("[i]f the Commission's revised commentary is at odds with [statute's] plain language, it must give way").

The decisions of other district courts support this Court's conclusion. As noted above, plaintiffs in cases challenging the new BOP policy have not raised uniform arguments. Consequently, only 5 of the 20 reported cases have addressed claims that the BOP's interpretation is invalid. In each of those cases, after thorough examination of the statute, its history and the OLC memo, the court concluded that the BOP's interpretation was contrary to the law. *See Tkabladze*, at 5–9 ("it is clear that plain language of 3621 covers a community confinement facility"); *Iacaboni*, 251 F.Supp.2d at 1024–36 ("DOJ's analysis adopts a curious posture, starting with a corner of the Sentencing Guidelines, then working backwards to the controlling general statute"); *Byrd*, 252 F.Supp.2d at 299–301 ("BOP seek[s] to find, in the statute, a limitation on [its] broad discretion that simply does not exist"); *Howard*, 248 F.Supp.2d at 538–46 (finding the OLC interpretation to be "a series of *non sequiturs* "); *Ferguson*, 248 F.Supp.2d at 565–74 (same). Moreover, in none of the cases denying relief have the courts been confronted with a challenge under the APA. *See, e.g., United States v. Pena*, 2003 WL 21197024 (W.D.N.Y. May 16, 2003) (addressing due process, ex post facto and equitable estoppel claims); *United States v. Kramer*, 2003 WL 1964489 (N.D.Ill. Apr. 28, 2003) (due process and ex post facto); *Borgetti v. Bureau of Prisons*, 2003 WL 743936 (N.D.Ill.Feb.14, 2003) (due process, ex post facto and separation of powers); *United States v. Herron*, 2003 WL 272170 (D.Kan. Feb.3, 2003) (due process); *Unit-*

*ed States v. James*, 244 F.Supp.2d 817 (E.D.Mich. Jan.27, 2003) (due process); *United States v. Gilbride*, 2003 WL 297563 (M.D.Pa. Jan.31, 2003); *United States v. Schild*, 2003 WL 260672 (D.Kan. Jan.21, 2003) (due process and ex post facto); *United States v. Andrews*, 240 F.Supp.2d 636 (E.D.Mich. January 13, 2003) (due process). Thus, in every case where a court has been required to interpret the statute, the BOP's interpretation has been rejected.

 This is yet another case where "[t]he BOP's interpretation of [the statute] is simply in conflict with the statute's plain meaning." *Byrd v. Hasty*, 142 F.3d 1395, 1398 (11th Cir.1998).[17] Because the statute is clear, BOP's interpretation is not entitled to deference. *National R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 417, 112 S.Ct. 1394, 118 L.Ed.2d 52 (1992). BOP's conclusion that it has no discretion to designate a CCC as a place of imprisonment is clearly incorrect, and any policy or practice based on that conclusion is due to be enjoined.

## IV. Relief

Plaintiffs have requested the following relief: (1) "[t]hat the agency actions and resulting new rule be adjudged and decreed to be unconstitutional . . . ;" (2) "[t]hat the agency actions and resulting new rule be adjudged and decreed to violate the Administrative Procedure Act;" (3) "[t]hat the defendants be enjoined from incarcerating the [p]laintiffs at [the designated institutions] and that, instead, they be enjoined to allow the service of their sentences . . . at the Spanish Fort Commu-

---

when it issued the Sentencing Guidelines upon which the OLC memo relies.

**17.** In *Byrd*, the Eleventh Circuit, adopting the reasoning of numerous other courts, found that a BOP Program Statement regarding

prisoners who could be given sentence credit for participating in drug treatment was entitled to no deference because the BOP's interpretation was clearly contrary to the statute it was designed to implement.

nity Corrections Center[;]" and (4) "[t]hat plaintiffs be granted such other relief as the case may requires or may be deemed just and proper by the court." Compl. ¶¶ 44–47. For the reasons stated in this opinion, the Court finds that plaintiff is entitled to a declaration that the new rule is in violation of the Administrative Procedures Act. However, because this Court has declined to address on plaintiffs' constitutional challenges,[18] plaintiffs' first prayer for relief is denied.

Plaintiffs' request for injunctive relief is too broad. While defendants should be enjoined from following the policy challenged in this case, plaintiffs are not entitled to serve their sentences in a CCC as a matter of right. BOP cannot deny plaintiffs' designation to a CCC on the ground that the law does not allow it to do so. The law *allows* BOP to consider a CCC recommendation and gives BOP *discretion* to determine whether CCC designation is appropriate. The Court cannot, however, dictate how BOP exercises its discretion; it can only enjoin BOP from refusing to exercise that discretion based on the agency's erroneous interpretation of the statute.

## V. Conclusion

For the reasons set forth above, the Court finds that the Bureau of Prisons exceeded its statutory authority in adopting the rule, policy or procedure at issue in this case. Accordingly, it is **ORDERED, ADJUDGED** and **DECREED:**

(1) That the BOP's new rule, policy or procedure announced on December 20, 2002 refusing to designate prisoners confinement in the CCC violates the Administrative Procedures Act;

(2) That the defendants shall reconsider the designation of the place of imprisonment for each of the plaintiffs; and

(3) That the defendants shall issue new designations for each plaintiff without taking into consideration, in any way, the invalid rule limiting the scope of its discretion in designating offenders to community confinement-that is, the designation will be based entirely upon pre-December 20, 2002 criteria.

A separate judgment shall be entered in accordance with Fed.R.Civ.P. 58(a).

## FINAL JUDGMENT

This action having been submitted to the Court for a decision on the merits without an evidentiary hearing, and a decision having been duly rendered by separate opinion entered this date, it is hereby OR-DERED, ADJUDGED and DECREED:

(1) That the BOP's new rule, policy or procedure announced on December 20, 2002 refusing to designate prisoners to serve terms of imprisonment in Community Corrections Centers violates the Administrative Procedures Act;

(2) That the defendants shall reconsider the designation of the place of imprisonment for each plaintiff and for the intervening plaintiff; and

(3) That the defendants shall issue new designations for each plaintiff and for the intervening plaintiff without taking into consideration, in any way, the invalid rule limiting the scope of its discretion in designating offenders to community confinement-that is, the designation will be based entirely upon pre-December 20, 2002 criteria.

---

**18.** *See* footnote 11, *supra,* p. 1306.