**Ronald HACKER, Petitioner,**

v.

**FEDERAL BUREAU OF PRISONS, Case Manager T.A. Perez, Counselor Billingsley, Case Manager Maksimowicz, Unit Manager R. Esquibel, Case Manager Cheatham, and Warden H.J. Marberry, Respondents.**

No. 06–12425–BC.

United States District Court,
E.D. Michigan,
Northern Division.

July 28, 2006.

706

Ronald Hacker, Milan, MI, pro se.

*OPINION AND ORDER DENYING PE-
TITIONER'S MOTIONS FOR TEM-
PORARY RESTRAINING ORDER
AND EVIDENTIARY HEARING,
ORDERING RESPONDENT TO
ANSWER, APPOINTING COUN-
SEL, AND SCHEDULING HEAR-
ING*

LAWSON, District Judge.

This matter is before the Court on the petitioner's motions for preliminary injunction, temporary restraining order, and evidentiary hearing. The petitioner, Ronald Hacker, is an inmate presently confined at the Federal Correctional Institution in Milan, Michigan. He has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the validity of certain Bureau of Prisons (BOP) regulations that govern placement within BOP facilities in the course of the execution of his sentence. The petitioner pleaded guilty to a drug-related offense in 2002 and was sentenced to a prison term of 60 months, to be followed by three years of supervised release. He argues that he is entitled to serve the last six months of his custody term in a Community Corrections Center or halfway house. The respondents have not filed a response to the petitioner's pleadings or motions. For reasons explained below, the Court concludes that the motion for temporary restraining order and motion for evidentiary hearing will be denied, the respondents will be directed to respond to the motion for preliminary injunction, and the court will appoint counsel for the petitioner to assist in the development of the legal issues presented.

I.

The focus of the petitioner's habeas corpus claim is his eligibility to serve the last six months of his sentence in a halfway house. The petitioner explains that he

was originally approved for a transfer to a halfway house in Youngstown, Ohio, to occur on September 23, 2006. However, he was informed on May 1, 2006 that the halfway house was full and would not be able to take him until February 2, 2007. Shortly thereafter, the Bureau of Prisons informed the petitioner that he could not transfer to the halfway house because he has medical problems and does not have hospitalization insurance. The petitioner's prison term is set to end on March 3, 2007. The habeas relief the petitioner requests is a transfer to serve the remainder of his sentence in a Community Corrections Center (CCC) or halfway house.

## II.

The petitioner's challenge to the action of the Bureau of Prisons is based on a change in BOP regulations that occurred in 2005, implementing a Department of Justice policy that was articulated toward the end of 2002. At that time, the Bureau of Prisons issued regulations providing that it would only place prisoners in community confinement at the end of their sentences for a period not exceeding the ten percent of their sentences or six months, whichever was less.

Prior to December 13, 2002, the Bureau of Prisons (hereinafter "BOP") was vested with the authority to determine the location of an inmate's imprisonment pursuant to 18 U.S.C. § 3621(b), which states:

The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence—

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28. In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b).

Another statute describes the BOP's obligation to prepare prisoners for community re-entry by placing them in community confinement. It states:

The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

18 U.S.C. § 3624(c). Since the promulgation of the Sentencing Guidelines in

1987, the BOP considered CCCs to be penal or correctional facilities and therefore determined that the "imprisonment" portion of a sentence may be satisfied by confinement in a CCC. Consequently, for many years the BOP routinely honored judicial recommendations to place offenders in CCCs for an imprisonment portion of their sentences. *See United States v. Serpa,* 251 F.Supp.2d 988, 989 (D.Mass. 2003). Prisoners could be placed in CCCs for up to six months at the end of their prison terms, regardless of the total length of their sentences. *Woodall v. Fed. Bureau of Prisons,* 432 F.3d 235, 240 (3d Cir.2005).

However, after the issuance of a memorandum opinion on December 13, 2002 by the Attorney General's Office of Legal Counsel (hereinafter "OLC") and the subsequent publication of 28 C.F.R. § 570.20 and 28 C.F.R. § 570.21, the BOP no longer has the discretionary authority to place an offender in a CCC based upon criteria set forth under 18 U.S.C. § 3621(b). The memorandum opinion stated:

> When an offender has received a sentence of imprisonment, the Bureau of Prisons does not have general authority, either upon the recommendation of the sentencing judge or otherwise[,] to place such an offender in community confinement at the outset of his sentence or to transfer him from prison to community confinement at any time BOP chooses during the course of his sentence.

(December 13, 2002 OLC Memorandum). The First and Eighth Circuits held that this policy change was contrary to the plain meaning of 18 U.S.C. §§ 3621 and 3624. *See Elwood v. Jeter,* 386 F.3d 842 (8th Cir.2004); *Goldings v. Winn,* 383 F.3d 17 (1st Cir.2004).

The petitioner challenges the validity and implementation of 28 C.F.R. § 570.20 and 28 C.F.R. § 570.21, which went into effect on February 14, 2005. The first of these regulations "provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community." 28 C.F.R. § 570.20. "Community confinement" includes confinement in Community Corrections Centers, also known as halfway houses, as well as home confinement. *Ibid.* The second regulation provides that the Bureau of Prisons "will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months." The Bureau of Prisons will not designate a prisoner to community confinement for a longer period unless "specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority." 28 C.F.R. § 570.21.

The criticism of these regulations articulated in many of the cases is that they curtail the BOP's general discretion to place an inmate at a CCC at any time; instead, they limit CCC placement to the lesser of 10% of a prisoner's total sentence or six months, and only as part of a pre-release program. *See Woodall,* 432 F.3d at 240. Furthermore, the Third Circuit has held, and the petitioner argues, that the BOP is now foreclosed from applying the criteria in 18 U.S.C. § 3621(b) when determining placement in a CCC generally due to the BOP's now limited authority to make CCC placement decisions "categorically" despite the nature of an inmate's individualized circumstances. *Id.* at 244. The petitioner argues that the BOP wrongly told him that he could be placed in a CCC for no more than ten percent of his sentence, and therefore it "categorically removed it's [sic] ability to consider

Plaintiff under the explicit factors set forth by Congress in Section 3621(b) for making placement and transfer determinations to a Community Correction Center." Petition at 6. He also argues that he pleaded guilty before the regulations were issued, at a time when the BOP was free to exercise its discretion to designate inmates to serve any portion of their sentences in CCCs.

The petitioner seeks an order restraining the BOP from imposing these regulations as they relate to the execution of his sentence. He asserts that an injunction is necessary because his release date is rapidly approaching; and he has been notified by the BOP that he will be denied the opportunity to be transferred to a CCC. Consequently, it is the petitioner's position that he will be subjected to imminent and irreparable harm.

### III.

"The BOP's change in policy regarding CCC designation has resulted in a stream of lawsuits in federal district courts throughout the nation," and "courts have been almost evenly divided in granting and denying relief." *Estes v. BOP*, 273 F.Supp.2d 1301, 1305 (S.D.Ala.2003). Some of these cases have been brought as habeas corpus petitions under 28 U.S.C. § 2241, although several others have arisen in the context of complaints for declaratory relief under 28 U.S.C. § 2201 or challenges under the Administrative Procedures Act, 5 U.S.C. § 551(4), *see Colton v. Ashcroft*, 299 F.Supp.2d 681, 684 (E.D.Ky.2004). The "majority of cases have addressed challenges to the BOP policy in the context of motions for preliminary injunctive relief." *Estes*, 273 F.Supp.2d at 1305 n. 10. (collecting cases).

■ Injunctive relief is not a typical remedy in habeas cases, since the authority of the court to order a custodian to take action in a habeas case in many ways overlaps the scope of relief that can be ordered via an injunction. Nonetheless, section 2241 is the appropriate vehicle for a federal prisoner to challenge the manner in which his sentence is executed, *see United States v. Jalili*, 925 F.2d 889, 893 (6th Cir.1991) (addressing a claim that arose when the BOP threatened to move a prisoner from a community treatment center to a "more secure facility" and holding that section 2241 was appropriately invoked because "the manner in which the sentence was being executed" was challenged). And injunctive relief has been granted by district courts in this circuit under circumstances similar to those presented by the petitioner here. *See Colton*, 299 F.Supp.2d at 692–93. *But see United States v. James*, 244 F.Supp.2d 817 (E.D.Mich.2003) (section 2255 petition, TRO injunctive relief denied, no APA claim); *United States v. Andrews*, 240 F.Supp.2d 636 (E.D.Mich.2003) (section 2255 petition, relief denied, no APA claim).

■ However, if an injunction is an appropriate remedy here, certainly a temporary restraining order is not. Federal Rule of Civil Procedure 65(b) states in part:

A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from the specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the Court in writing the efforts, if any, which have been made to give the notice and the reason supporting the claim that notice should not be required.

Fed.R.Civ.P. 65(b).

■ "Reasonable notice" consists of information received within a reasonable

time to permit an opportunity to be heard. *Granny Goose Foods, Inc. v. Bhd. of Teamsters,* 415 U.S. 423, 439, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974) (noting that *ex parte* "temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard"). In this case, none of the pleadings contain facts or reasons "supporting the claim that notice should not be required." Fed.R.Civ.P. 65(b). Nor are there sufficient factual allegations establishing that irreparable harm may result "before the adverse party or that party's attorney can be heard in opposition." *Ibid.* There are no allegations, for example, that the respondents plan to take action immediately concerning the petitioner's placement or to transfer him beyond the Court's jurisdiction as a response to his lawsuit. A temporary restraining order is an extraordinary remedy that generally is reserved for emergent situations in which a party may suffer irreparable harm during the time required to give notice to the opposite party or where notice itself may precipitate the harm. *See Hambell v. Alphagraphics Franchising Inc.,* 779 F.Supp. 910, 912–13 (E.D.Mich.1991). The petitioner may well be entitled to equitable relief. On the present record, however, the Court finds that the drastic remedy of granting a temporary restraining order without reasonable notice and a response from the government is not justified.

The petitioner, however, has made a sufficient showing to suggest that he may be entitled to a preliminary injunction. *See* Fed.R.Civ.P. 65(a). There is reason to believe that the petitioner will be able to make a persuasive presentation on each of the four factors that the Court must consider in determining whether a temporary injunction should issue: (1) the likelihood of the party's success on the merits of the claim; (2) whether the injunction will save the party from irrepara-

ble injury; (3) the probability that granting the injunction will substantially harm others; and (4) whether the public interest will be served by the injunction. *Summit County Democratic Central and Executive Committee v. Blackwell,* 388 F.3d 547, 552 (6th Cir.2004); *Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Productions,* 134 F.3d 749, 753 (6th Cir.1998).

As noted earlier, courts are deeply divided on the question. *Compare Fults v. Sanders,* 442 F.3d 1088 (8th Cir.2006) (granting habeas relief and holding that the statute governing placement by the BOP of prisoners in pre-release custody did not authorize BOP regulations limiting placement in CCCs); *Woodall v. Fed. Bureau of Prisons,* 432 F.3d 235 (3d Cir.2005) (granting habeas relief and holding that the petitioner should be placed in a CCC for the last 6 months of his sentence without regard to 2005 regulations); *Martin v. Willingham,* 430 F.Supp.2d 82 (D.Conn. 2006) (granting habeas relief and holding that 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c) did not authorize BOP regulations categorically to limit inmate transfers to CCCs for a period of 6 months or 10% of a petitioner's sentence, whichever is less), *with Tunnicliffe v. Bureau of Prisons,* No. 06–CV–49–HRW, 2006 WL 1360802 (E.D.Ky. May 15, 2006) (denying habeas and injunctive relief, holding that there is no protected liberty interest in CCC placement); *Montoya v. Rios,* No. 05–CV–00606–PSF–PAC, 2005 WL 3203813 (D.Colo. Oct.26, 2005) (denying habeas relief, holding that the 2005 regulations are a lawful categorical exercise of the BOP's discretion under 18 U.S.C. § 3621(b)); *Rodriguez v. Fed. Bureau of Prisons,* No. 4:06–CV–12631, 2006 WL 1897296 (E.D.Mich. July 11, 2006) (dismissing very similar petition for failure to exhaust administrative remedies); *Shabazz v. Marberry,* No. 2:06–cv–10922, 2006 WL 1555987 (E.D.Mich. June 5, 2006)

(finding a lack of exhaustion but dismissing on the merits because the petitioner's misconduct led to his reduction of time in community confinement). The issue was brought before the Sixth Circuit in *Dismas Charities, Inc. v. U.S. Dep't of Justice,* 401 F.3d 666 (6th Cir.2005). However, it was the CCC in *Dismas* that was bringing the lawsuit (not an inmate), and the case was dismissed on lack of standing grounds. *Id.* at 677. Consequently, the court in *Dismas* did not address the merits of the plaintiff's claim, which is worthy of review.

In order to assist the Court and the parties in the presentation of the issues, the Court believes that counsel should be appointed for the petitioner to file briefs and argue the matter in open court. *See* 18 U.S.C. § 3006A(a)(2)(B); *McFarland v. Scott,* 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994) (allowing a federal court to appoint counsel to help a prisoner prepare a habeas petition when the prisoner sought such counsel and could not prepare the petition himself).

### IV.

The Court finds that the petition is not subject to summary dismissal. Rather, it raises issues that have colorable merit and deserve further hearing. The petitioner has not made a sufficient showing to obtain a temporary restraining order, but his request for a preliminary injunction merits further argument. There is no basis to conclude at this point that an evidentiary hearing is necessary. The appointment of counsel for the petitioner is warranted in this case.

Accordingly, it is **ORDERED** that the petitioner's motion for preliminary injunction or temporary restraining order [dkt # 4] is **DENIED IN PART.**

It is further **ORDERED** that the petitioner's Motion for Evidentiary Hearing [dkt # 6] is **DENIED** without prejudice.

It is further **ORDERED** that the respondents shall file an answer to the petition and the motion for preliminary injunction **August 18, 2006.**

It is further **ORDERED** that the Federal Defender Office is appointed to represent the petitioner in this matter under the Criminal Justice Act, 18 U.S.C. § 3006A.

It is further **ORDERED** that the parties shall appear before the Court for argument on the motion for preliminary injunction counsel on **August 28, 2006 at 10:00 a.m.**