Daniel COLTON, Plaintiff,

v.

John ASHCROFT, et al., Defendants.

No. CIV.A. 03–554–JBC.

United States District Court,
E.D. Kentucky,
Lexington Division.

Jan. 15, 2004.

Brian W. Shaughnessy, Washington, DC, Milton Coburn Toby, Perch & Toby, Lexington, KY, for Plaintiff.

Cheryl D. Morgan, U.S. Attorney's Office, EDKY, Lexington, KY, for Defendants.

### MEMORANDUM OPINION AND ORDER

COFFMAN, District Judge.

The plaintiff, a federal prisoner, seeks injunctive relief against a regulation which would delay his release into a halfway house until only ten percent of his sentence remains. He claims that the regulation violates his rights under the Fifth Amendment Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and that it violates the Administrative Procedure Act. Deeming futile the exhaustion of administrative remedies and finding that the plaintiff has a strong likelihood of success on the merits and otherwise meets the prerequisites for the relief which he seeks, the court will grant the plaintiff's motion for a preliminary injunction and a temporary restraining order.

### BACKGROUND: THE RULE CHANGE

Pursuant to 18 U.S.C. § 3621(b), the Bureau of Prisons ("BOP") has authority to designate the place of imprisonment for federal inmates. Since the enactment of the Sentencing Guidelines in 1987, the BOP has considered Community Corrections Centers [1] [hereinafter "CCCs" or "halfway houses"] to be penal or correctional facilities and has, therefore, determined that the "imprisonment" portion of a sentence may be satisfied by service in a CCC.

BOP Program Statement 7310.04 (issued 10/19/93) says the BOP has authority "to place sentenced prisoners in community corrections centers, since such centers met 18 U.S.C. § 3621(b)'s definition of a 'penal or correctional facility.'" BOP Program Statement 7310.04 (issued 12/16/98) says the BOP "is not restricted ... in designating a CCC for an inmate." More specifically, PS 7310.04 regarding Community Corrections Center Utilization and Transfer procedure ¶ 5 (12/16/98) sets forth that

---

1. Such a facility, intended to ease the transition between prison and the outside world, permits a prisoner to be released for approved purposes, including work.

"the Bureau is not restricted by § 3624(c) in designating a CCC or an inmate and may place an inmate in a CCC for *more* than the 'last ten percentum of the term,' or more than six months, if appropriate." *Pearson v. United States*, 265 F.Supp.2d 973 (E.D.Wis.2003) (emphasis added).

Consequently, for many years the BOP routinely honored judicial recommendations to place offenders in CCCs for the imprisonment portion of their sentences. *United States v. Serpa*, 251 F.Supp.2d 988, 989 (D.Mass.2003). "These practices were entirely routine, and were all but taken for granted by all participants: the BOP, the Probation Office, the U.S. Attorney's Office, the defense bar, and the judiciary." *Id.* On December 13, 2002, the Attorney General's Office of Legal Counsel ("OLC") issued a memorandum opinion which concluded that the BOP's longstanding CCC placement practice violated the law. The OLC's memo said that the statute, 18 U.S.C. § 3621(b), which for 15 years had been interpreted as giving the BOP discretion to place inmates in CCCs, actually forbade that exercise of discretion. The OLC memo, relying on 18 U.S.C. § 3624(c), stated that an inmate may not serve more than six months, or the last ten percent of his criminal sentence, whichever is less, in pre-release programming in a halfway house.

18 U.S.C. § 3624(c) states:

(C) Pre-release custody. The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

Based upon the OLC opinion, on December 20, 2002, the BOP Director sent a memorandum to federal judges informing them that the BOP was implementing "a significant procedure change regarding inmate designations to community correction centers," and that the BOP would no longer honor some judicial recommendations to place inmates in CCCs or use CCCs as a substitute for imprisonment. *Serpa*, 251 F.Supp.2d at 988. On the same date, the Department of Justice and the BOP allegedly enacted a new policy which prohibits CCC transfers before a prisoner has remaining only 10 percent of his term of imprisonment.

"The BOP's change in policy regarding CCC designation has resulted in a stream of lawsuits in federal district courts throughout the nation," and "courts have been almost evenly divided in granting and denying relief." *Estes v. BOP*, 273 F.Supp.2d 1301, 1305 (S.D.Ala.2003). The "majority of cases have addressed challenges to the BOP policy in the context of motions for preliminary injunctive relief." *Id.*, n. (collecting cases). Two of those cases arose within the Sixth Circuit: *United States v. James*, 244 F.Supp.2d 817 (E.D.Mich.2003) (§ 2255, TRO injunctive relief denied, no APA claim), and *United States v. Andrews*, 240 F.Supp.2d 636 (E.D.Mich.2003) (§ 2255, relief denied, no APA claim). The petitioners in both *James* and *Andrews* were in CCCs and objected to being returned to prison under the BOP's new rule.

## PLAINTIFF'S CIRCUMSTANCES

On February 12, 1999, the plaintiff, Daniel Colton, was sentenced by the United States District Court for the District of Maryland to serve 38 months. He reported for service on July 23, 2001. He is presently incarcerated at FMC–Lexington. At first he understood that he would be transferred to a CCC for the last six months of his sentence. On September 23,

2002, however, BOP officials allegedly told him that his CCC transfer would occur 150 days from his May 17, 2004 release date, or approximately December 20, 2003. Then on or about December 23, 2002, he learned that he would spend only 3.8 months in a halfway house, pursuant to the new OLC opinion and the BOP's resulting policy/rule change.[2] Under the new rule, Mr. Colton's halfway-house placement would not begin until approximately February 6, 2004. Allegedly, his BOP Case Manager told him that, but for the new regulation and OLC memo, he would have been transferred in mid-December 2003.[3] Consequently, his time in a CCC was reduced from approximately five months to approximately 3 months and 24 days. The plaintiff is now eligible to spend only the final 97 days of his sentence in a halfway house/CCC rather than the 150 days he would have been afforded under the BOP's pre-December 20, 2002 policy.

The plaintiff asserts that his Due Process and Equal Protection rights have been violated by this rule change and that the manner in which it was enacted violates the Administrative Procedure Act.

## RELIEF SOUGHT

The plaintiff asks the court to enter a preliminary injunction and a temporary restraining order requiring the BOP to transfer him to a halfway house without regard to the new regulation.

## ANALYSIS

### Introduction

The defendants assert that *res judicata* applies to bar the plaintiff's claims, relying upon an action which the plaintiff previously filed in the United States District Court in the District of Columbia but which was dismissed for failure to exhaust administrative remedies. Alternatively, the defendants argue failure to exhaust such remedies in this action, as well as disputing the plaintiff's substantive claims.

### Res Judicata

The doctrine of *res judicata* applies to repetitive suits involving the same cause of action. *See C.I.R. v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948). A final judgment on the merits precludes the same parties from relitigating issues that were or could have been raised in that action. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398–99, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). The purpose of this doctrine is well-known:

> The purpose of *res judicata* is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources. A final judgment on a claim is *res judicata* and bars relitigation between the same parties or their privies on the same claim. It bars relitigation on every issue actually litigated or which could have been raised with respect to that claim. To constitute a bar, there must be an identity ... of the facts creating the right of action and of the evidence necessary to sustain each action.

*Westwood Chemical Co., Inc., v. Kulick*, 656 F.2d 1224, 1227 (6th Cir.1981) (citations omitted).

---

**2.** The plaintiff calls it a new "rule" and the BOP generally calls it a "policy" change, but the court will use both of those terms as well as the term "regulation" interchangeably, without ascribing any particular significance to either.

**3.** This calculation assumes a May 12, 2004 release date, as claimed by the plaintiff. The court defers to the BOP, however, for the precise calculation of the duration of the sentence.

▮ Under *res judicata,* a final judgment on the merits of an action bars relitigation between the same parties or their privies on issues that were or could have been raised in that action. *See Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 467 n. 6, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Vinson v. Campbell County Fiscal Court,* 820 F.2d 194, 197 (6th Cir. 1987).

Certain principles govern the application of *res judicata:*

> *Res judicata,* or claim preclusion, bars a subsequent action between the same parties or their privies based upon the same claims or causes of action that were or could have been raised in a prior action. *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); *Kane v. Magna Mixer Co.,* 71 F.3d 555, 560 (6th Cir.1995). *Res judicata* applies when there is "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Kane,* 71 F.3d at 560.

*Sanders v. County of Wayne,* 2003 WL 23095673 at *1 (6th Cir.2003).

Certain elements are required for application of the doctrine:

> *Res judicata* is established with four elements: 1) a final decision was rendered on the merits in the first action by a court of competent jurisdiction; 2) the second action involved the same parties or their privies as the first; 3) the second action raises issues actually litigated or which should have been litigated in the first action; and 4) there is an identity of the causes of action. *Bittinger v.*

*Tecumseh Prods. Co.,* 123 F.3d 877, 880 (6th Cir.1997).

*Gray v. City of Jackson,* 70 Fed. Appx. 254, 256, 2003 WL 21500177 at *2 (6th Cir.2003).

▮ *Res judicata* is not applicable as a defense in the currently considered action. The District of Columbia District Court, although a court of competent jurisdiction, did not render a decision on the merits of the plaintiff's claim which was filed there, deciding only that the plaintiff had not exhausted his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"). That action has no *res judicata* effect on the instant action. *See Watler v. Campbell,* 33 Fed.Appx. 764, 2002 WL 509231 (6th Cir.2002). Instead, if a plaintiff's case has been dismissed under the PLRA for failure to exhaust and the prisoner has finally exhausted his administrative remedies, then he may re-file his complaint and plead exhaustion. *Baxter v. Rose,* 305 F.3d 486 (6th Cir.2002). The plaintiff has taken that action. Thus this court is not prohibited by *res judicata* from proceeding to the merits of the Declaratory Judgment Act claim before this court.

#### Exhaustion of Administrative Remedies

The plaintiff brings this action as a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202. The District of Columbia action was brought only pursuant to the Declaratory Judgment Act, and § 2241 was not asserted as a basis for jurisdiction in that court.

The defendants concede that the plaintiff's claims are properly before this court pursuant to 28 U.S.C. § 2241. The defendants set forth in their memorandum [Record No. 4 at p. 2, D.C. Record No. 5] that the plaintiff's instant claims "may only

properly be brought as a § 2241 habeas corpus action in the district of confinement, the Eastern District of Kentucky ...." [*Id.* at Exhibit B, p. 7]. The defendants add that "this lawsuit ... must be brought as habeas ... under 28 U.S.C. § 2241." [*Id.*, p. 9 (citing *United States v. Jalili*, 925 F.2d 889, 891, 893 (6th Cir. 1991))].

■ Because only the Declaratory Judgment Act claim was before the D.C. district court, that court's ruling, dismissing that action for the plaintiff's failure to exhaust administrative remedies as such were applicable pursuant to 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act, did not address the issue of whether there are any exhaustion requirements that may be applicable to § 2241 petitions and, if there are, whether the plaintiff has satisfied them. Thus, an examination must be made of: (1) whether a Declaratory Judgment action requires exhaustion and, if so, whether the plaintiff has complied; and (2) whether a 28 U.S.C. § 2241 writ of habeas corpus requires exhaustion and, if so, whether the plaintiff has complied. Federal prisoners bringing a claim pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, are required, pursuant to 42 U.S.C. § 1997e(a) (a section of the PLRA), to exhaust their available administrative remedies within the BOP's grievance procedure. *Lavista v. Beeler*, 195 F.3d 254 (6th Cir.1999).

The analysis of exhaustion requirements for a 28 U.S.C. § 2241 writ of habeas corpus, however, is more complicated. Two different sources of exhaustion could potentially apply to a § 2241 writ: (1) PLRA statutorily required exhaustion and (2) judicially created exhaustion.

(1) Statutorily Required Exhaustion

The Sixth Circuit Court of Appeals has never required application of the PLRA's 42 U.S.C. § 1997e(a) exhaustion require-

ment to a 28 U.S.C. § 2241 writ of habeas corpus. The Sixth Circuit has never specifically ruled on the applicability of the PLRA to a § 2241 writ. Instead, so far it has only deemed the PLRA inapplicable to §§ 2254 and 2255 writs. *Kincade v. Sparkman*, 117 F.3d 949, 950–51 (6th Cir. 1997). In *United States v. West*, No. Civ. 03–CV–70239–DT, 2003 WL 1119990 (E.D.Mich., Feb. 20, 2003), the court clearly stated, "the explicit exhaustion requirements which are contained in the Antiterrorism and Effective Death Penalty Act (AEDPA) and the Prison Litigation Reform Act (PLRA) do not apply to habeas petitions filed under 28 U.S.C. § 2241." *Id.* (citing *Hicks v. Hood*, 203 F.Supp.2d 379, 382 (D.Or.2002)). *West* involved essentially the same claim presented in the instant case.

The defendants assert that pursuant to *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (an action brought pursuant to 42 U.S.C. § 1983), and pursuant to 42 U.S.C. § 1997e(a), PLRA exhaustion is required in this § 2241 petition because this is a "prison conditions" case. 42 U.S.C. § 1997e(a) states that "no action shall be brought **with respect to prison conditions** ... by a prisoner ... until such administrative remedies as are available are exhausted." 18 U.S.C. § 3626(g)(2) defines "prison conditions" as "the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison." The defendants contend that in *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), the Supreme Court broadly defined "prison conditions" when it wrote: "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circum-

stances or particular episodes, and whether they allege excessive force or some other wrong." The defendants do not cite any case that has applied *Porter* to a § 2241 petition. In *Hinton v. Parsons,* 73 Fed.Appx. 872, 2003 WL 22089539 (6th Cir.2003), the court considered an action purportedly filed pursuant to 28 U.S.C. § 2241 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Hinton,* the district court determined that the plaintiff did not have a *Bivens* claim because he did not exhaust administrative remedies. The appellate court, citing *Porter v. Nussle,* agreed that the district court properly dismissed the *Bivens* claim for failure to exhaust pursuant to the PLRA's 42 U.S.C. § 1997e(a). The ruling in *Hinton* was limited to the *Bivens* claim; the § 2241 aspect was unaddressed. Only one case has been found applying PLRA § 1997e(a)'s exhaustion requirement to a § 2241 habeas petition. *Gutierrez v. United States,* No. 03–CV–1232(FB), 2003 WL 21521759 (E.D.N.Y. July 3, 2003). The court relied on the same language from *Porter v. Nussle* that the defendants rely upon as authority to statutorily, rather than judicially, require the § 2241 petitioner to exhaust. In *Gutierrez* the court recognized a futility or waiver exception to such PLRA-imposed exhaustion to be applied in cases where there are "exigencies of the situation." *Id.* at *1 (citing *Marvin v. Goord,* 255 F.3d 40, 43 (2d Cir.2001)).

■ The PLRA exhaustion requirement does not apply to 28 U.S.C. § 2241 writs of habeas corpus. *Monahan v. Winn,* 276 F.Supp.2d 196 (D.Mass.2003) (addressing a challenge to the BOP's new CCC policy of no longer designating offenders to CCCs, the court held that the PLRA's 42 U.S.C.A. § 1997e(a) exhaustion requirement did not apply because the petitioner

challenged the manner, location or conditions of sentence execution and not conditions of confinement) (relying on *Davis v. Fechtel,* 150 F.3d 486, 490 (5th Cir.1998)).

The PLRA's filing-fee provisions have been deemed inapplicable to § 2241 habeas corpus actions. *Malave v. Hedrick,* 271 F.3d 1139 (8th Cir.2001) (citing *See Blair–Bey v. Quick,* 151 F.3d 1036, 1040 (D.C.Cir.1998); *Davis v. Fechtel,* 150 F.3d 486, 490 (5th Cir.1998); *Martin v. Bissonette,* 118 F.3d 871, 874 (1st Cir.1997); *Anderson v. Singletary,* 111 F.3d 801, 805 (11th Cir.1997)).

The PLRA has been deemed inapplicable to any requests for collateral relief under 28 U.S.C. §§ 2241, 2254 or 2255. *Walker v. O'Brien,* 216 F.3d 626–629 (7th Cir.2000):

in keeping with the decisions in *Davis v. Fechtel,* 150 F.3d 486, 488–90 (5th Cir. 1998); *McIntosh v. United States Parole Commission,* 115 F.3d 809, 811–12 (10th Cir.1997); and *Blair–Bey v. Quick,* 151 F.3d 1036, 1039–41 (D.C.Cir.1998) that the PLRA does not apply to any requests for collateral relief under 28 U.S.C. §§ 2241, 2254 or 2255. See also *Martin v. Bissonette,* 118 F.3d 871, 874 (1st Cir.1997) (holding broadly that PLRA does not apply to habeas corpus petitions filed by state prisoners); *Reyes v. Keane,* 90 F.3d 676, 678 (2d Cir.1996) (same with respect to habeas corpus actions); *Santana v. United States,* 98 F.3d 752, 756 (3d Cir.1996) (same with respect to actions under 28 U.S.C. §§ 2254 and 2255); *Smith v. Angelone,* 111 F.3d 1126, 1131 (4th Cir.1997) (same with respect to habeas corpus actions); *Kincade v. Sparkman,* 117 F.3d 949, 950–51 (6th Cir.1997) (same with respect to actions under 28 U.S.C. §§ 2254 and 2255); *Naddi v. Hill,* 106 F.3d 275, 277 (9th Cir.1997) (same with respect to habeas corpus actions); *Anderson v. Sin-*

*gletary,* 111 F.3d 801, 806 (11th Cir. 1997) (same with respect to actions under 28 U.S.C. §§ 2254 and 2255).

Additionally, 28 U.S.C. §§ 2241, 2254 and 2255 filings have been deemed not covered by the PLRA. *Harris v. Garner,* 216 F.3d 970, 979 n. 7 (11th Cir.2000) (citing *See Anderson v. Singletary,* 111 F.3d 801, 805 (11th Cir.1997)) ("Congress promulgated the PLRA to curtail prisoner tort, civil rights and conditions litigation, not the filing of habeas corpus petitions.").

The cases relied upon to conclude that the PLRA is not applicable to impose its 42 U.S.C. § 1997e(a) exhaustion requirement on § 2241 writs of habeas corpus were all decided prior to *Porter v. Nussle's* 2002 decision. However, *Porter v. Nussle* was a 42 U.S.C. § 1983 action, and it is far from clear that the Supreme Court was writing outside the context of § 1983 actions and, specifically, with regard to writs of habeas corpus. In light of the fair abundance of law determining that the PLRA is not applicable to writs of habeas corpus, it is likely that the Supreme Court would have been more pointed if it was overruling all of these decisions. Thus, *Porter v. Nussle's* PLRA 42 U.S.C. § 1997e(a) exhaustion requirement will not be applied to this § 2241 writ of habeas corpus.

Consequently, the PLRA's exhaustion of administrative remedies procedure, as set forth in 42 U.S.C. § 1997e(a), is not applicable to the plaintiff's 28 U.S.C. § 2241 writ of habeas corpus. Therefore, all of the cases which say that the PLRA requires full exhaustion and affords no futility waivers are inapplicable to this plaintiff's petition.

### (2) Judicially Created Exhaustion Requirements

■ Federal prisoners are required to exhaust administrative remedies before filing a habeas corpus petition under 28 U.S.C. § 2241. *Little v. Hopkins,* 638 F.2d 953, 953–954 (6th Cir.1981) (per curiam). Only after a federal prisoner seeking § 2241 relief has sought and exhausted administrative remedies pursuant to 28 C.F.R. §§ 542.10–16 (1997) (and not pursuant to PLRA provision § 1997e(a)) may the prisoner then seek § 2241 judicial review. *United States v. Oglesby,* 52 Fed. Appx. 712, 714, 2002 WL 31770320 *2 (6th Cir.2002) (citing *United States v. Wilson,* 503 U.S. 329, 335, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992); *United States v. Cobleigh,* 75 F.3d 242, 251 (6th Cir.1996)). The exhaustion of administrative remedies procedure required of a § 2241 petitioner is not a statutory (PLRA) requirement, but instead, is a wholly judicially created requirement. *See Wesley v. Lamanna,* 27 Fed.Appx. 438, 2001 WL 1450759 (6th Cir. 2001).

The judicially imposed non-statutory exhaustion of Bureau of Prisons administrative remedies for a federal prisoner seeking to bring a 28 U.S.C. § 2241 petition is set out at 28 C.F.R. §§ 542.10–.16 (1987). Section 542.13(a) demands that an inmate informally present his complaint to the staff, thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy (BP–8 1/2). If the inmate cannot informally resolve his complaint, then he may file a formal written complaint (BP–9) "within fifteen (15) calendar days of the date on which the basis of the complaint occurred." *See* § 542.13(b). If the inmate is not satisfied with the Warden's response, he may appeal (BP–10) to the Regional Director, and, if not satisfied with the Regional Director's response, the inmate may appeal (BP–11) that decision to the Office of General Counsel. *See* § 542.15.

■ The judicially created administrative remedy exhaustion requirement, un-

like a PLRA-imposed exhaustion requirement, permits waiver of further exhaustion in the face of futility. *Aron v. LaManna,* 4 Fed.Appx. 232, 2001 WL 128349 (6th Cir.2001) (citing *See McKart v. United States,* 395 U.S. 185, 200, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) ("petitioner must show that the administrative remedy is inadequate or cannot provide the relief requested for exception to the exhaustion requirement to apply"); *Goar v. Civiletti,* 688 F.2d 27, 28–29 (6th Cir.1982)). Resort to administrative remedies is futile if there has been "a prior indication from the agency that it does not have jurisdiction over the matter or it has evidenced a strong position on the issue together with an unwillingness to reconsider." *James v. United States Dept. of Health and Human Services,* 824 F.2d 1132, 1139 (D.C.Cir. 1987).

Consequently, the plaintiff must exhaust BOP administrative remedies *unless* he can establish futility.

### Futility of Exhaustion

The plaintiff asserts that further exhaustion is futile and should not be cause for this court to delay deciding his claims on the merits. The plaintiff asserts futility of exhaustion because, since his BP–11 and any further appeal will ultimately be decided by the Deputy Attorney General's Office that issued the new rule challenged here, any further appeals are futile. He claims that it is futile to require exhaustion as a prerequisite to addressing his claims on the merits, because the BOP has made such a clear and consistent and widespread stand against his request.

4. The defendants' argument, that a finding of futility will open the floodgates by permitting a futility finding in any case involving BOP policy, is unavailing. Here the challenge is not merely to BOP policy. It is, instead, to a directive by the Department of Justice that the

■ As there has been a prior indication that the Attorney General's office has evidenced a strong position on the issue, together with an unwillingness to reconsider, resort to administrative remedies for this plaintiff is futile.[4] *James v. United States Dept. of Health and Human Services,* 824 F.2d 1132, 1139 (D.C.Cir.1987). Further exhaustion for the plaintiff is futile and, thus, further exhaustion is waived. *Aron v. LaManna,* 4 Fed.Appx. 232, 2001 WL 128349 (6th Cir.2001); *Goar v. Civiletti,* 688 F.2d 27, 28–29 (6th Cir.1982). Even if *Porter v. Nussle* is applied in the context of a § 2241 petition, this plaintiff's exigencies of having his opportunity to enjoy any success he may have on the merits if his case is further "strung out" affords him the necessary waiver of further exhaustion. *Gutierrez v. United States,* No. 03–CV–1232(FB), 2003 WL 21521759 (E.D.N.Y., July 3, 2003).

### THE MERITS

Six bases for his claim are asserted by the plaintiff. Because the plaintiff's claim with regard to the Administrative Procedure Act is dispositive, it is not necessary to address his five remaining claims, at this juncture.

### The Administrative Procedure Act

The plaintiff asserts that the "new rule"/policy in question is a "rule" for purposes of the Administrative Procedure Act. 5 U.S.C. § 551(4). He asserts that the BOP imposed the "new rule" without necessary compliance under the Administrative Procedure Act [hereinafter "APA"], 5 U.S.C. § 553(b)-(d) and, thus, the rule is invalid.

BOP must construe a statute in a certain way which contravenes 15 years of experience. BOP officials who would grant the plaintiff's request thus risk a charge of insubordination for failure to obey a direct order. This is hardly a simple matter of BOP policy.

The defendants claim that pursuant to 5 U.S.C. § 553(b)(A), the APA is not applicable to policy statements and what has been changed is only a policy statement or interpretation of an old law, 18 U.S.C. § 3624(c). The plaintiff asserts that said exemption is not effective as to "substantive" or "legislative" changes and that this rule change is "substantive" and "legislative" and, therefore, the APA is applicable. The plaintiff asserts that said exemption is not effective because this "new rule" is not interpretive of an existing law or regulation.

The defendants also claim that, absent a valid constitutional challenge, BOP decisions pursuant to 18 U.S.C. § 3624(c) are precluded from judicial review under 5 U.S.C. § 3625. *See Eaton v. United States*, 178 F.3d 902, 903 (7th Cir.1999). The plaintiff counters that 5 U.S.C. § 3625 does not exempt this "new rule" from the 5 U.S.C. § 553(b)-(d) notice-and-comment requirements of the APA.

Most cases considering similar APA claims have granted temporary or preliminary injunctive relief to the prisoner, because the prisoner is likely to succeed on the merits of his or her claim because the BOP's implementation of the "new rule"/"policy" violated the APA and, therefore, implementation of the policy must be enjoined. *See Estes v. Federal Bureau of Prisons*, 273 F.Supp.2d 1301, 1305 (S.D.Ala.2003); *Monahan v. Winn*, 276 F.Supp.2d 196 (D.Mass.2003); *Howard v. Ashcroft*, 248 F.Supp.2d 518 (M.D.La. 2003); *Ferguson v. Ashcroft*, 248 F.Supp.2d 547 (M.D.La.2003); *Cato v. Menifee*, 2003 WL 22725524 (S.D.N.Y. 2003); *Byrd v. Moore*, 252 F.Supp.2d 293 (W.D.N.C.2003); *Iacaboni v. United States*, 251 F.Supp.2d 1015 (D.Mass.2003); *Mallory v. United States*, Civ. A. 03–10220, 2003 WL 1563764 (D.Mass.2003); *Godbout v. United States*, 2003 WL 22495751 (D.Mass.2003).[5]

**5.** In *Adler v. Menifee*, 293 F.Supp.2d 363 (S.D.N.Y.2003), the BOP's application of the statutory 10 percent requirement was deemed not to implicate the Administrative Procedure Act (APA). The court divided the "new rule"/"new policy" CCC assignment cases into two categories. In "front end" cases the prisoner has a CCC assignment at the beginning of the sentence. Judge Brieant deemed "front end" cases to be governed solely by 18 U.S.C. § 3621(b). In "back end" cases the prisoner has been in prison and anticipates being sent to a CCC near the end of the sentence. "Back end" cases were deemed governed solely by 18 U.S.C. § 3624(c), the newly interpreted "new rule"/policy statute. *Colton* is a "back end" case. In *Adler* the court said that "the new policy [insofar as it is applied to "front end" issues] may be unlawful." *Id.* at 366–67. With regard to "back end" issues the court said, "there is no issue involving the Administrative Procedures Act. The opinion of the Deputy Attorney General is no more than an interpretation [as opposed to a "new rule"] ... there is no change in the plain meaning of the statute." *Id.* at 367–68 (citing See 5 U.S.C. 553(b)(3), and *Benton v. Ashcroft*, 273 F.Supp.2d 1139, 1146 (S.D.Cal.

2003)). The opinion of the Deputy Attorney General, however, is much more than an "interpretation." The opinion and its implementation comprise a new rule since it dramatically changes what for 15 years has been the prior method of operating under exactly the same statutory language. That 18 U.S.C. § 3624(c) has no "plain meaning" is verified by the fact that the BOP, Attorney General, courts, and prisoners for 15 years apparently thought § 3624(c) had a "plain meaning" of an entirely different sort than that which purportedly was "reinterpreted" as of December 20, 2002 in the OLC's opinion. 18 U.S.C. § 3624(c) is ambiguous, as is evidenced by the mere fact that the Attorney General could vastly change an entire process without changing a word of § 3624(c)'s language. Such a sweeping change does implicate the APA. Judge Brieant found *Iacaboni v. United States*, 251 F.Supp.2d 1015 (D.Mass.2003); *Howard v. Ashcroft*, 248 F.Supp.2d 518 (M.D.La.2003); and *Byrd v. Moore*, 252 F.Supp.2d 293 (W.D.N.C.2003), all of which find that the APA has been violated, to be merely "front end" cases. They were deemed to have no bearing on "back end" cases.

That the BOP policy is not legally valid, because it was improperly promulgated or is an unreasonable agency interpretation, was also recognized in *Dismas Charities, Inc. v. United States Department of Justice, Federal Bureau of Prisons,* 287 F.Supp.2d 741, 744 (W.D.Ky.2003) (dismissing for lack of standing):

> FN3. The substantive issue, whether the new BOP policy is legally valid, appears to be fairly settled. Numerous federal district courts across the country have invalidated the policy because (1) it is procedurally improper under the Administrative Procedure Act because it was enacted without proper notice and comment; and (2) it is substantively invalid because it represents an unreasonable agency interpretation. *See Monahan v. Winn,* 276 F.Supp.2d 196, 197 (D.Mass. 2003) ("Numerous courts across the country have found the new BOP policy to be legally invalid on a variety of grounds.") (collecting cases: *see, e.g., Iacaboni v. United States,* 251 F.Supp.2d 1015 (D.Mass.2003); *Pearson v. United States,* 265 F.Supp.2d 973 (E.D.Wis. 2003); *Tipton v. Fed. Bureau of Prisons,* 262 F.Supp.2d 633 (D.Md.2003); *Byrd v. Moore,* 252 F.Supp.2d 293 (W.D.N.C.2003); *United States v. Serpa,* 251 F.Supp.2d 988 (D.Mass.2003); *Ferguson v. Ashcroft,* 248 F.Supp.2d 547 (M.D.La.2003); *Howard v. Ashcroft,* 248 F.Supp.2d 518 (M.D.La.2003); *Ashkenazi v. Atty. Gen.,* 246 F.Supp.2d 1 (D.D.C. 2003); *United States v. Tkabladze,* Nos. CV 03–01152, CR 02–00434(A), 2003 WL 22836502 (C.D.Cal.2003); *Mallory v. United States,* No. Civ.A. 03–10220–

DPW, 2003 WL 1563764 (D.Mass. Mar. 25, 2003); *United States v. West,* No. Civ. 03–CV–70239–DT, 2003 WL 1119990 (E.D.Mich. Feb. 20, 2003); *McDonald v. Fed. Bureau of Prisons,* No. 03–CV–235 (N.D.Ga. Feb. 14, 2003); *United States v. Canavan,* No. CR. 00–276, 2003 WL 245226 (D.Minn. Jan. 22, 2003)).

Consequently, the plaintiff's claim that the Administrative Procedure Act's notice and comment provisions have been violated is a valid claim and renders the "new rule" invalid. In the context presented by the plaintiff's motion, this constitutes a strong likelihood of success on the merits.

## INJUNCTIVE RELIEF

■ Four factors must be considered in determining whether to grant temporary injunctive relief: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether the issuance of the injunctive relief would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunctive relief. *See Marchwinski v. Howard,* 309 F.3d 330, 333 (6th Cir.2002).

■ As discussed above, the plaintiff has a strong likelihood of success on the merits of his Administrative Procedure Act violation claim. He will suffer irreparable injury if he is denied a timely CCC placement, in that he will be denied irretrievable community readjustment time. Moreover, no substantial harm will be caused to others if the plaintiff is afforded a timely CCC placement 150 days before

Judge Brieant is mistaken, as § 3624(c) is implicated in both "front end" and "back end" cases. BOP Program Statement 7310.04 says that § 3624(c) does not restrict § 3621 ("front end") designations; however, the "new rule" says that § 3624(c) does restrict BOP § 3621 ("front end") designations.

Consequently, § 3624(c) is implicated in both § 3621 "front end" and § 3624(c) "back end" decisions. Therefore, the three "front end" cases which Judge Brieant excludes are relevant authority and do support this court's ruling. The decision in *Adler v. Menifee* offers no impediment to this court's decision.

his release date. The BOP had already determined, prior to the implementation of the new rule in December of 2002, that the plaintiff was eligible for CCC placement and, but for implementation of the new rule, the plaintiff would already have been released. Thus, no substantial harm can be attributed to or anticipated by the plaintiff's timely CCC placement.

■ Finally, the public interest will be served by granting the requested injunctive relief.

In *Byrd v. Moore,* 252 F.Supp.2d 293 (W.D.N.C.2003), the court granted preliminary injunctive relief for prisoners situated similarly to this plaintiff and, in doing so, appropriately said:

> The public has an interest in prisoners rehabilitating themselves and their reputation in the community, if they are not a security risk. The public interest would be harmed by the Petitioners no longer being able to work and support their families. The public interest would be similarly injured by any violation of statutory or constitutional rights.

*Id.* at 306. In the instant case, the public interest would be fostered by the plaintiff's beginning his rehabilitation immediately. The court will issue a preliminary injunction and a temporary restraining order requiring the BOP to transfer the plaintiff to a halfway house without regard to the regulation at issue.

Accordingly, the court **ORDERS** as follows:

The plaintiff's motion for a preliminary injunction and a temporary restraining order is **GRANTED**, and the Bureau of Prisons shall transfer the plaintiff to a halfway house without regard to the regulation at issue.