**UNITED STATES of America,
Appellee,**

v.

**Floyd ARTHUR, Defendant–Appellant.**

**Docket No. 03–1046.**

United States Court of Appeals,
Second Circuit.

Argued: Nov. 17, 2003.

Decided: May 11, 2004.

Howard O. Kieffer, Federal Defense Associates, Santa Ana, California (Thomas F. Liotti, Garden City, NY, on the brief), for Defendant–Appellant.

Bryan J. Rose, Assistant U.S. Attorney, Brooklyn, N.Y. (Roslynn R. Mauskopf, U.S. Attorney, and David C. James, Assistant U.S. Attorney, on the brief), for Appellee.

POOLER, B.D. PARKER, JR., and WESLEY, Circuit Judges.

POOLER, Circuit Judge.

Floyd Arthur was convicted in August 2001 by a jury in the U.S. District Court for the Eastern District of New York of two counts of mail fraud in violation of 18 U.S.C. § 1341. He was sentenced by Judge Block on July 27, 2001 to a term of imprisonment of one year and one day. His conviction was affirmed by this Court in a May 3, 2002 summary order. *See* *U.S. v. Arthur*, Dkt. No. 01–1424 (2d Cir. 2002).

Arthur remained on bail during the pendency of his appeal. In anticipation of the setting of Arthur's surrender date, his attorney wrote to Judge Block on October 23, 2002 to "respectfully request that the Court recommend that the Bureau of Prisons designate Mr. Arthur to a Community Corrections Center in Brooklyn, New York." The request was based upon Mr. Arthur's family and business circumstances. In an order, dated October 28, 2002, Judge Block made the requested recommendation and set a surrender date of December 10, 2002. This date was later extended by Judge Block until January 9, 2003.

The instant appeal is occasioned by a memorandum composed by the Office of Legal Counsel at the Department of Justice ("the OLC Memo"), dated December 13, 2002, and forwarded to the Bureau of Prisons ("the BOP"). The OLC Memo contains the following legal directive:

> Your office has informed us that when a federal offender whom the [BOP] deems to be low-risk and nonviolent receives a short sentence of imprisonment, BOP often places that offender in a community corrections center, halfway house, or other form of "community confinement," rather than in prison. Your office has asked us to advise you whether BOP has general authority, either upon the recommendation of the sentencing judge or otherwise, to place such an offender directly in community confinement at the outset of his sentence or to transfer him from prison to community confinement during the course of his sentence.

> We conclude below that BOP has no such general authority. As we explain, BOP's statutory authority to implement sentences of imprisonment must be construed, wherever possible, to comport with the legal requirements that govern the federal courts' sentencing orders. *Community confinement does not constitute imprisonment for purposes of a sentencing order, and BOP lacks clear general statutory authority to place in community confinement an offender who has been sentenced to a term of imprisonment.* BOP's practice is therefore unlawful.

It is uncontested that the OLC Memo upset a decades-long policy pursuant to which the BOP operated under the as-

sumption that it had discretion to assign federal prisoners to serve all or part of their sentences in places other than prison. As one court has noted, "recommendations to community confinement have been made in thousands of cases by hundreds of judges continuously since at least 1965, and in nearly all instances accepted by the BOP." *Iacaboni v. U.S.*, 251 F.Supp.2d 1015, 1017 (D.Mass.2003). Further, because the BOP decided to apply the memo's directive retroactively, it appears that hundreds of federal prisoners serving time in community corrections centers were immediately notified that they would be transferred to prison. Unsurprisingly, therefore, the OLC Memo "ignited a firestorm of legal challenges nationwide." Tom Schoenberg, *Halfway House Backlash*, Legal Times, February 10, 2003, at 1. A district court of this Circuit has recently determined that "the vast majority" of courts to consider the matter have "held that the new policy was unlawful." *Cato v. Menifee*, 2003 WL 22725524 at *4 (S.D.N.Y. Nov.20, 2003) (collecting cases). *But see Cohn v. Fed. Bureau of Prisons*, 302 F.Supp.2d 267 (S.D.N.Y. 2004) (upholding new policy against statutory and constitutional challenges).

In late December 2002 the BOP informed Arthur that it intended to send him to the federal prison in Schuykill, Pennsylvania. In response, Arthur's counsel filed a motion for an order to show cause, dated January 6, 2003, seeking an order "[d]esignating the defendant to a Community Corrections Center in Brooklyn, New York, to serve his sentence." After a brief hearing on January 8, Judge Block ordered briefing with regard to the legality of the BOP's new policy and stayed Arthur's surrender date pending the outcome of the motion for an order to show cause.

On January 24, 2003, Judge Block denied the motion in a ruling from the bench.

First, Judge Block stated that he had no authority to countermand the OLC Memo: "The higher ups in that line of command [at the BOP] decided that they wanted the local BOP to follow the law. There is nothing I can do about that." Further, Judge Block noted that, whatever the legality of the new policy, the recommendation he made regarding Arthur's place of confinement was merely a recommendation, which "need not be followed by [the BOP]." The district court also ordered that Arthur surrender to the BOP on February 7, 2003, which order has been stayed by this Court pending the outcome of this appeal.

## DISCUSSION

### I. Jurisdiction.

Arthur's motion for an order to show cause set forth no statutory authority pursuant to which he sought relief. Rather, Arthur contends that he "brought his request in the district court as part of the underlying criminal case, seeking relief generally from the government." At the January 24 hearing, however, after colloquy with Judge Block, Arthur's counsel characterized the motion as a habeas action pursuant to 28 U.S.C. § 2241. On this appeal, however, Arthur argues that this was a mistake on his counsel's part, and that any habeas action brought by him while on bail must be brought in the Southern District of New York. As a consequence, he argues, neither Judge Block nor this Court is afforded jurisdiction over Arthur with respect to the issuance of any habeas relief.

■ It is clear that, even though he is not presently imprisoned, Arthur is in custody and thus capable of seeking habeas relief. *See, e.g., Hensley v. Municipal Court*, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) (petitioner who has

been released on own recognizance after conviction while awaiting sentencing is in custody). Paraphrasing 28 U.S.C. § 2243, however, Arthur notes that a habeas petition "must be directed to the court of the judicial district in which the prisoner's custodian (usually a warden or jailer) may be reached by service of process." Given that he remains on bail, Arthur argues that the BOP—specifically, the Community Corrections Manager in Manhattan—is the authority most analogous to his custodian because it "is the only authority that can control his designation" to a place of confinement "once the stays are dissolved, one way or the other." Consequently, Arthur urges that "this case should be remanded to the United States District Court for the Eastern District of New York for transfer to the United States District Court for the Southern District of New York."

This argument clearly has no merit. As the Government correctly argues, the BOP at present has no authority over Arthur, and will have none until he surrenders to them. Rather, "Arthur is in custody for purposes of Section 2241 by virtue of the limitations placed upon his liberty by the conditions of his bail. . . . Arthur's bail conditions were set in the Eastern District of New York . . . . Since those bail conditions place Arthur in custody, the officials who administer the bail system in the Eastern District of New York logically should be considered Arthur's custodians."

At least one district court hearing a challenge to the legality of the OLC Memo has adopted precisely this position with respect to a habeas petitioner who had been convicted in Ohio, remained on bail, but sought habeas relief from the Attorney General of the United States in the U.S. District Court for the District of Columbia:

> In this case, the plaintiff has sought and has been granted several stays of his reporting date by the sentencing

judge and is currently on release pursuant to an unsupervised bond issued by the sentencing judge. Moreover, the plaintiff is currently residing in Florida at his home with the acquiescence of the sentencing judge. Because the plaintiff is at liberty solely at the discretion of the sentencing judge, and the judge at this time is the only authority that can control his pre-detention activity and when the plaintiff's incarceration will commence, this Court concludes that the United States District Court for the Southern District of Ohio has custody of the plaintiff for habeas jurisdiction.

*Combs v. Atty. Gen. of the U.S.*, 260 F.Supp.2d 53, 57 (D.D.C.2003).

At the time he filed his motion for an order to show cause, Arthur was at liberty solely at the discretion of Judge Block. The motion was thus correctly filed in the Eastern District of New York, and we have jurisdiction to hear this appeal.

## II. The Appeal Should be Dismissed.

█ Although we have jurisdiction over this appeal, we are not convinced that we should proceed to consider its merits in the present procedural posture. Arthur contends that the BOP's new policy forbidding designation of federal prisoners to community corrections centers is illegitimate because it diminishes the discretion committed to the BOP by Congress pursuant to which it "may designate any available penal or correctional facility" as a place of confinement. 18 U.S.C. § 3621(b). He also argues that the new policy is invalid for failure to comply with the notice and comment provisions of the Administrative Procedure Act. 5 U.S.C. §§ 551 *et seq.*

We are reluctant to consider these arguments in light of the fact that Arthur has not yet surrendered to the BOP and that agency is not presently before this Court. Presumably because of this, Arthur does

not ask us to issue relief in the form of an order directing the BOP to designate a community corrections center as his place of confinement. Rather, Arthur urges that the BOP "should be ordered to designate a place of imprisonment for Mr. Arthur without taking into consideration, in any way, the new and invalid rule limiting the scope of its discretion in designating offenders to community confinement—that is, the designation can only be entirely based upon pre-December 20, 2002 criteria. Compliance should be in good faith and without manipulation."

Such an order may very well be pointless. If it were issued, and the BOP adheres to its previously expressed intention to send Mr. Arthur to federal prison, it is likely that Arthur would conclude that this decision was not made in good faith, which would likely lead him to relaunch his challenge to the BOP's policy.

It seems to us that the better course would be to dismiss the instant appeal and direct the district court to set a new surrender date for Mr. Arthur. Upon surrender, should Mr. Arthur not be designated for confinement in a community corrections center, he may file a new habeas petition directly against the BOP.[1]

Accordingly, for the reasons set forth above, the appeal is dismissed. The case is remanded to the district court for the establishment of a new surrender date.

---

1. Prior to filing such an action against the BOP, Arthur would normally be charged with exhausting the administrative remedies set forth in the BOP's grievance procedure regulations. 28 C.F.R. §§ 542.10–16. We note, however, that some courts have waived the exhaustion requirement in cases challenging the BOP's new policy on the ground of futility in light of the BOP's determined adherence to enforcing the policy. *See Zucker v. Menifee,* 2004 WL 102779 at *4 (S.D.N.Y. Jan.21, 2004); *Colton v. Ashcroft,* 299 F.Supp.2d 681, 689–91 (E.D.Ky. 2004); *Howard v. Ashcroft,* 248 F.Supp.2d 518, 532–33 (M.D.La.2003).