RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0226P (6th Cir.)
File Name: 04a0226p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

No. 03-5256

TIFFANY HARRIS
MONTGOMERY,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 02-20247—Bernice B. Donald, District Judge.

Argued: June 10, 2004,

Decided and Filed: July 14, 2004

Before: MERRITT and DAUGHTREY, Circuit Judges;
NIXON, District Judge.*

_____

\* The Honorable John T. Nixon, United States District Judge for the Middle District of Tennessee, sitting by designation.

---

_____

## COUNSEL

**ARGUED:** Needum L. Germany, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Eric H. Jaso, ASSISTANT UNITED STATES ATTORNEY, Newark, New Jersey, for Appellee. **ON BRIEF:** Randolph W. Alden, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Eric H. Jaso, ASSISTANT UNITED STATES ATTORNEY, Newark, New Jersey, Carroll L. Andre, III, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

_____

## OPINION

_____

MERRITT, Circuit Judge. This case raises the question of whether the Federal Sentencing Guidelines should be viewed as a mandatory constraint on the discretion of federal district judges to fix sentences. The defendant, Mrs. Tiffany Montgomery, pled guilty to one count of bank fraud involving approximately $21,000. At sentencing, the district court found a total offense level of 10 in Zone B and believed it was constrained by the mandatory nature of the Sentencing Table (Chapter 5) and Sections 5B1.1(a)(2) and 5C1.1(c)(2) of the Federal Sentencing Guidelines. Zone B, level 10, calibrates to 6-12 months of imprisonment. Section 5B1.1(a)(2) provides:

*Imposition of a Term of Probation*

  (a) Subject to the statutory restrictions in subsection
  (b) below, a sentence of probation is authorized if:

. . .

(2) the applicable guideline range is in Zone B of the Sentencing Table and the court imposes a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention as provided in subsection (c) of § 5C1.1 (Imposition of a Term of Imprisonment)

Section 5C1.1(c) provides:

*Imposition of a Term of Imprisonment*

. . .

(c)  If the applicable guideline range is in Zone B of the Sentencing Table, the minimum term may be satisfied by --

(1)   a sentence of imprisonment; or

(2)   a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement *or home detention according to the schedule in subsection (e), provided that at least one month is satisfied by imprisonment* . . . .

(emphasis added) (footnote omitted).

At the sentencing hearing, the district court imposed the minimum six-month sentence allowed under the guidelines and adopted option 2 of § 5C1.1(c), sentencing Mrs. Montgomery to 30 days imprisonment with a recommendation that it be served in a halfway house in Memphis so that she could continue to meet her family obligations. She also received 5 months of home confinement and 3 years of supervised release.

Under 18 U.S.C. § 3621, Mrs. Montgomery would be placed in the custody of the Bureau of Prisons for her term of "imprisonment." The judge's recommendation for place of

imprisonment is not binding on the Bureau, but at the time Mrs. Montgomery was sentenced, the Bureau had been acting under a consistent policy for approximately 15 years whereby nonviolent offenders sentenced to short periods of imprisonment would be placed in a community confinement center or halfway house for the requisite period of "imprisonment" if the judge had made such a recommendation.

After the hearing, and just days before judgment was entered, the Department of Justice's Office of Legal Counsel issued a memorandum changing this policy. It informed the Bureau of Prisons that it lacked the general authority to place persons who have been sentenced to a short term of imprisonment directly in a community confinement center or halfway house, or to transfer the person to a halfway house at any time it chooses during the course of the term of imprisonment. (Letter of December 13, 2002, opinion of Office of Legal Counsel, 2002 WL 31940146 (O.L.C.) (Preliminary Print). The Office of Legal Counsel concluded that a halfway house or other community confinement center is not "imprisonment" and that the Bureau's long practice of using direct placements to halfway houses for sentences of "imprisonment" was contrary to case law and section 5C1.1 of the Sentencing Guidelines. As a result, on January 15, 2003, the Bureau of Prisons assigned Mrs. Montgomery to the West Tennessee Detention Center.

The defendant filed a motion challenging the Bureau's new policy as a violation of "her constitutional and statutory rights" and because the new policy frustrates the court's clearly stated intent, which relied upon a then-existing and long-standing Bureau of Prisons policy. In the motion, defendant also stated her intent to file a motion to correct the sentence under Federal Rule of Civil Procedure 36 and a motion for resentencing under 28 U.S.C. § 2255. The defendant also moved to stay the execution of her sentence until the district court could rule on her motion. On February 10, 2003, the district court denied defendant's

motion, concluding that it is bound by the Guidelines and that it lacked the authority to modify Mrs. Montgomery's sentence. The district court did grant the defendant's motion to stay so that she could pursue her appeal to this court on the Bureau's policy change.

The district court should be given an opportunity to reconsider its sentence under the Federal Sentencing Guidelines for two reasons. First, the intervention of the new Bureau of Prisons policy frustrates the district court's original sentence. During the period since the district court's order denied the defendant's motion, a number of courts have held the policy invalid for a variety of reasons. *See Distefino v. Federal Bureau of Prisons*, No. 04 Civ. 0007 RWS, 2004 WL 396999, **4-6 (S.D.N.Y. Mar. 4, 2004); *Zucker v. Menifee*, No. 03 Civ. 10077 (RJH), 2004 WL 102779, *6 (S.D.N.Y. Jan. 21, 2004); *Colton v. Ashcroft*, 299 F. Supp. 2d 681, 684 (E.D. Ky. 2004)(collecting cases); *Monahan v. Winn*, 276 F. Supp. 2d 196, 207-08, 212 (D. Mass. 2003); *Ferguson v. Ashcroft*, 248 F. Supp. 2d 547, 572 (M.D. La. 2003); *Iacaboni v. United States*, 251 F. Supp. 2d 1015, 1024-29 (D. Mass. 2003). The district court should have an opportunity to consider and adjust the sentence in light of the Bureau's new confinement policy and these cases and, most importantly, the Supreme Court's recent sentencing decision discussed below.

Second, in *Blakely v. Washington*, No. 02-1632, decided June 24, 2004, the Supreme Court made a sea change in the administration of the Federal Sentencing Guidelines. The court applied *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to a state sentencing system that allowed a judge to find a fact that increased the federal sentence by 37 months. The Court held that "determinate" or fixed rule-bound sentencing, like the Federal Sentencing Commission's system, which increases sentences based on a requirement of judicial fact-finding instead of jury fact-finding, violates the trial-by-jury requirement of the Sixth Amendment. The Court held that a system that automatically calibrates sentences from a grid or table based on various factual elements as found by the judge

encroaches on the fact-finding authority of juries under the Sixth Amendment. The Court made it clear that an indeterminate sentencing system administered by judges whose hands are not tied, as was the case prior to the imposition of the present system in 1987 by the Federal Sentencing Commission, does not violate the Sixth Amendment:

> First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence – and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely v. Washington*, No. 02-1632, 2004 WL 1402697, *7 (June 24, 2004) (emphasis in original).

Therefore, in order to comply with *Blakely* and the Sixth Amendment, the mandatory system of fixed rules calibrating sentences automatically to facts found by judges must be displaced by an indeterminate system in which the Federal Sentencing Guidelines in fact become "guidelines' in the dictionary-definition sense ("an indication or outline of future policy," Webster's International Dictionary (3d ed. 1963)). The "guidelines" will become simply recommendations that the judge should seriously consider but may disregard when she believes that a different sentence is called for. This solution to the immediate problem in federal sentencing is not

inconsistent with the alternative position by the Deputy Attorney General in his memo to federal prosecutors, a memo forwarded to the federal judiciary on July 7, 2004. ("In that event [when the guidelines may not be applied as mandatory rules], the government should urge the court to impose sentence, exercising traditional judicial discretion, within the applicable statutory sentence range" with the "recommendation in all such cases . . . that the court exercise its discretion to impose a sentence that conforms to a sentence under the Guidelines....")

The Sentencing Reform Act of 1984, which gave rise to the present determinate sentencing system, does not by its terms require a mandatory, rule-bound system calibrating sentences to judicially-found facts. The statutory language would have allowed the creation of an indeterminate system in which the guidelines are simply considerations for Article III federal judges to access before passing sentence. The most important provision of the statute, section 3553(a) of Title 18, simply says that "the court, in determining the particular sentence to be imposed, *shall consider*" a large number of listed factors like the "seriousness of the offense" and the "characteristics of the defendant," only one of which is the "kind of sentence and the sentencing range established" by the Sentencing Commission. In addition to the various factors that a judge should "consider" as listed in Section 3553(a), the next subsection counsels the judge to consider the "aggravating or mitigating circumstances" of the particular case. The Sentencing Commission itself interpreted the statutory language and converted this advisory language into the kind of mandatory rules of a determinate system of sentencing that the Supreme Court has now invalidated. In light of *Blakely,* and the language of the enabling act itself, a district judge should no longer view herself as operating a mandatory or determinate sentencing system, but rather should view the guidelines in general as recommendations to be considered and then applied only if the judge believes they are appropriate and in the interests of justice in the particular case.

Accordingly, the judgment of the district court is vacated and the case remanded for resentencing in view of the intervening Bureau of Prisons policy and the principles of indeterminate sentencing as outlined in *Blakely v. Washington* and this opinion.